WASHBURN and others vs. THE MILWAUKEE & LAKE WINNEBAGO RAILROAD COMPANY.
BARKER vs. SAME.
STRINGHAM vs. SAME.
SAME vs. SAME.

*January 9 — January 29, 1884.*

RAILROADS: EMINENT DOMAIN. *(1) Assessment must be based on evidence. (2) Part taken to be considered with reference to whole tract. (3) Special benefits. (4) Evidence of sales. (5) Consolidation of appeals. (6) Value of land for platting. (7) Costs: who is " successful party."*

1. In assessing the compensation to be made to the owner of land taken by a railroad company the jury may resort to their own knowledge of the premises, obtained from a *view* thereof, and to their general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony as to value and damages, but their assessment must be supported by the testimony or it cannot stand. Instructions from which the jury might reasonably have understood that they were to assess the compensation according to their own knowledge, judgment, and

Washburn and others vs. Milwaukee & Lake Winnebago R. R. Co.

good sense, aided by their view of the premises, and that they might do so without regard to the testimony or in opposition thereto, are *held* erroneous.

2. Where a part only of a lot or tract of land is taken, the owner is entitled to recover its value when considered with reference to the whole tract and as a part thereof.

3. The location of a depot in the vicinity of land of which a portion has been taken for the railroad, is not a *special benefit* (within the meaning of sec. 1848, R. S.), which may be allowed in deduction of the damages sustained by the owner to the portion not taken. *Semble*, that a benefit which may thus be allowed is one which enhances the value of the land affected by it, by improving its physical condition and adaptability for use; such as by reclaiming waste land, by draining or flowing a marsh, by aiding in the development of a water-power, by dispensing with the necessity of fences, or by opening a mine or quarry, and the like.

4. In the assessment of the compensation, evidence of sales of other lands may be admitted in the discretion of the court. But to be of value such sales should be of land similar in character, location, and value to the land in question, and should not be too remote in time.

5. Separate appeals taken from awards made by the commissioners of appraisal to the same party, may be consolidated into one action in the circuit court. R. S., sec. 2792.

6. If the *present value* of the lands taken is enhanced by reason of their adaptability to some use to which they might be put in the future — as if land used only for farming purposes is so situated that it might be platted into city lots — such enhanced value is the proper basis for the assessment of compensation.

7. Under sec. 1849, R. S., which provides that upon an appeal from an award, costs shall be allowed to the *successful party*, the plaintiff is such party if, on his appeal, the award is increased, or if, on the defendant's appeal, the award is not reduced. Otherwise the defendant is the successful party.

APPEALS from the Circuit Court for *Winnebago* County. The facts sufficiently appear from the opinion.

*Gabe Bouck*, for the appellants, cited, to the point that the verdict must be based solely on the testimony, and that the *view* was not itself evidence but merely intended to enable the jury better to understand the testimony: *Stampof-*

*ski v. Steffens*, 79 Ill., 303; *Martin v. Johnson*, 89 id., 537; *Toledo, W. & W. R'y Co. v. Ingraham*, 77 id., 309; *Miller v. Balthasser*, 78 id., 302; *Steele v. Davis*, 75 Ind., 192; *Heady v. V., Mt. S. & V. T. Co.*, 52 id., 118; *Jeffersonville, M. & I. R. R. Co. v. Bowen*, 40 id., 545; *Close v. Samm*, 27 Iowa, 503; that evidence of sales of other lands was inadmissible: *E. P. R. R. Co. v. Heister*, 40 Pa. St., 55; *P. V. & C. R. R. Co. v. Rose*, 74 id., 362; *P. & N. Y. R. & C. Co. v. Bunnell*, 81 id., 414; *C. P. R. R. Co. v. Pearson*, 35 Cal., 247; *Stinson v. C., St. P. & M. R'y Co.*, 27 Minn., 284; *Chapin v. B. & P. R. R. Co.*, 6 Cush., 422; *Upton v. S. R. B. R. R. Co.*, 8 id., 600; *Wyman v. L. & W. C. R. R. Co.*, 13 Met., 327; that the plaintiff could recover the value of the land for purposes of subdivision: *C. & S. R'y Co. v. Longworth*, 30 Ohio St., 108; *Goodin v. C. & W. Canal Co.*, 18 id., 169; *N. Y., L. & W. R'y Co. v. J. C. & R'y Co.*, 27 Hun, 116; *Queen v. Brown*, L. R. 2 Q. B., 630; *Boom Co. v. Patterson*, 98 U. S., 403; *Young v. Harrison*, 17 Ga., 30; *Chandler v. J. P. Aq. Co.*, 125 Mass., 544; *Drury v. Midland R. R. Co.*, 127 id., 572; *Haslam v. G. & S. W. R. R. Co.*, 64 Ill., 353; that if the plaintiff recovered anything, he was the *successful party*, and entitled to costs: Pierce on Railways, 191; *B. & P. R. R. Co. v. Chamberlain*, 60 Me., 285; *Goodwin v. B. & M. Railroad*, 63 id., 363; *Smithbeck v. Larson*, 18 Wis., 183; *N. E. L. Church v. Thorson*, 21 Wis., 34.

For the respondent there were briefs by *Flanders & Bottum*, attorneys, and *Edwin H. Abbot*, of counsel, and oral argument by *Mr. Flanders*. To the point that the jury were not bound to decide from the oral testimony of witnesses alone, and that the instructions in that behalf were correct, they cited: *Neilson v. C., M. & N. W. R'y Co.*, 58 Wis., 516; *Head v. Hargrave*, 105 U. S., 49; *Parks v. Boston*, 15 Pick., 209; *Patterson v. Boston*, 20 id., 166; *Murdock v. Sumner*, 22 id., 156; *Kearney v. Mayor*, 92 N. Y.,

617; *Elwood v. W. U. Tel. Co.*, 45 id., 549; *Church v. Milwaukee*, 31 Wis., 519; *Blair v. Pelham*, 118 Mass., 421; *Locke v. S. C. & P. R. Co.*, 46 Iowa, 109; *Reddin v. Gates*, 52 id., 210; dissenting opinion in *Close v. Samm*, 27 Iowa, 503; *Bee P. Co. v. Hickborn,* 4 Allen, 65; *Schmidt v. N. Y. U. M. F. Ins. Co.*, 1 Gray, 536; *Knox v. Bigelow*, 15 Wis., 421.

LYON, J.   All of the above cases arose in the circuit court by appeals severally taken by all the parties from awards made by commissioners duly appointed, in certain condemnation proceedings.   The cases were severally tried in the circuit court, and the jury in each case were sent to view the premises affected by the proceedings.   The plaintiff in each case appealed from the judgment of that court rendered pursuant to the verdict of the jury assessing his compensation for the taking of his land.   Such of the errors assigned as cause for reversing the judgments, which it is deemed necessary to pass upon, will be considered in their order.

1. In the *Washburn* case and the two *Stringham* cases the jury were instructed, in substance, that they were to determine the amount of compensation to which the plaintiffs respectively were entitled, from the whole evidence, from their view, and their own knowledge, judgment, and good sense. In one of the cases the language of the court was: "You are to determine it [the compensation] from the whole evidence that has been given you in the case, from your view — you take the view you make, you take your own knowledge, your own judgment, your own good sense."   There are other passages in the instructions given which served to impress the minds of the jurors (or might have done so) that their own knowledge, and the dictates of their own judgments and good sense were the paramount and controlling considerations in making up their verdict, to which the sworn testimony of any or all the witnesses conflicting there-

with must yield. For example, the jury were told in the case above quoted that "if a witness, from his manner and appearance upon the stand, from his want of knowledge of the subject matter, or *from other causes* apparent to you and your judgment, his evidence does not convince your mind that he is right, you should discard it, because it is not evidence in the case. On the other hand, if from his knowledge, from his experience, from his appearance and manner he does convince you, and your judgment, your knowledge acquired by your view, your good sense, together with all the evidence given in the cause determines in your mind that the damages are so much, that should be your verdict, more or less." In the two other cases, although the instructions were not quite as full as in the one quoted, they were of the same purport.

These instructions present for consideration two very important and interesting questions. These are, (1) How far may a jury who have made a view of premises affected by the action disregard the evidence given in court, and act upon their own observation on such view in making up their verdict? and (2) In what cases (if any), and to what extent, may jurors act upon their personal knowledge of the facts in controversy, and may they render a verdict in accordance therewith in opposition to the testimony?

We understand that the object of a view is to acquaint the jury with the physical situation, condition, and surroundings of the thing viewed. What they see they know absolutely. If a witness testify to anything which they know by the evidence of their senses on the view is false, they are not bound to believe, indeed cannot believe, the witness, and they may disregard his testimony, although no other witness has testified on the stand to the fact as the jury know it to be. For example, if a witness testify that a certain farm is hilly and rugged, when the view has disclosed to the jury and to every juror alike that it is level

and smooth, or if a witness testify that a given building was burned before the view, and the view discloses that it had not been burned, no contrary testimony of witnesses on the stand is required to authorize the jury to find the fact as it is, in disregard of testimony given in court.

But if the fact of which the jury may thus take cognizance is only one of many elements which must be considered to determine some other fact which can only be satisfactorily determined by a resort to professional or expert testimony, the case is very different. Such are these cases. The jury were to assess the value of the land taken for the use of the railway company, and the damages to the other adjacent lands of the respective owners resulting from such taking. To do this intelligently it became necessary to determine the location, quality, and condition of the land, the uses to which it was or might be applied, its market value, the manner in which the taking of a part of the tract would affect the residue, and perhaps other conditions affecting such value and damages. Some of these conditions, and more especially the value of the land, could not be definitely determined by the view alone, and cannot properly be said to be within the common knowledge of the jury. The opinions of witnesses acquainted with the values of such property are essential to an intelligent judgment.

At the common law a view might have been had in a real action, and by statute in any action, to the end that the jury might see the land or thing claimed to enable the jurors better to understand the evidence on the trial. Jacob's Law Dict., tit. "View." We think such is still the office of a view. Hence, whatever the jury in each of these cases learned of the lands in question by the view, was available to enable them to determine the weight of conflicting testimony respecting value and damage, but no further. For reasons hereinafter more fully stated, we think such value and damages could only be assessed upon the evidence given

by the witnesses, and that an assessment outside of the evidence could not be upheld.   For instance, if no witness had estimated the compensation to which a plaintiff was entitled at less than $500 or more than $1,000, a verdict for less than $500 or more than $1,000 should be set aside because unsupported by the evidence.

The foregoing observations are abundantly supported by the cases cited by counsel for the plaintiff, particularly the case of *Close v. Samm,* 27 Iowa, 503.

As to how far jurors may make up their verdict on their own knowledge, independently of the testimony, or against the testimony, the true rule is indicated in what has already been said concerning the view.   A jury is not bound to give, and cannot give, any weight to testimony which, although undisputed by witnesses, is contrary to what every person of ordinary intelligence knows to be true.   To illustrate, should a witness testify that at Boston on a certain day the sun arose at midnight, or that the Mississippi river empties into Lake Michigan, or that white is black, the testimony would be rejected at once.   So, in matters of mere opinion, in cases where the testimony of experts is not required, if the jury know all the facts, they are not necessarily controlled by the opinions of witnesses, if such opinions have been received. In such cases the jury are as competent as the witnesses to form an opinion, and the opinions of witnesses, if objected to, are inadmissible.   *Veerhusen v. C. & N. W. R'y Co.,* 53 Wis., 689.   Beyond this the jury cannot properly go.

To allow jurors to make up their verdict on their individual knowledge of disputed facts material to the case, not testified to by them in court, or upon their private opinions, would be most dangerous and unjust.   It would deprive the losing party of the right of cross-examination, and the benefit of all the tests of credibility which the law affords.   Besides, the evidence of such knowledge, or of the grounds of such opinions, could not be preserved in a bill of exceptions or

questioned on appeal. It would make each juror the absolute judge of the accuracy and value of his own knowledge or opinions, and compel the appellate court to affirm judgments on the facts, when all of the evidence is before it and there is none whatever to support the judgment. The court would be obliged to presume that the jury or some juror had, or at least thought he had, some personal knowledge of facts outside the testimony, or contrary to it, which would sustain the judgment. Such a ruling in a case, the procedure in which was governed by common-law rules of evidence, we presume was never heard of.

We think the correct rule in these cases is that above stated, to wit, if the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, but their assessment must be supported by the testimony, or it cannot stand. *Halaska v. Cotzhausen,* 52 Wis., 624, although not originally determined by a jury, was decided upon this rule. That was an action, *quantum meruit,* for services as attorneys. The testimony of the value of the services was very conflicting. The referee's report, fixing the value, was modified by the circuit court, and judgment went for a larger sum, but there was evidence to support it. This court said: "But a fact appears in the case, the existence of which enabled the circuit court to pass upon the conflicting expert testimony more intelligently than could either the referee or this court. The appeals in the condemnation proceedings were tried before the learned judge, who modified the report of the referee and ordered the judgment from which this appeal was taken. Whatever of skill and ability the defendants brought to their work, whatever success resulted from their efforts, the judge saw and knew. He knew, also, better than any witness (except the city attorney) how vigorously the causes were litigated by the city in his court. All

this does not make the judge a witness in the cause, but it peculiarly qualified him to pass upon the weight of the conflicting testimony in respect to the value of the defendant's services. See *Wisconsin Central R. R. Co. v. Cornell University*, 49 Wis., 162. He has found that they have not been overpaid for their services, and there is testimony to support the finding. For the reasons above stated, we cannot disturb such finding, although we might, but for those reasons, be inclined to think that the testimony preponderated against it."

This is but an application to the knowledge of the judge on a question of value of the same rule hereinbefore applied to knowledge obtained by the jury by a view; that is, that such knowledge may be used in determining the weight and preponderance of conflicting testimony concerning value.

Counsel for the defendant makes a quotation from the opinion in *Neilson v. C., M. & N. W. R'y Co.*, 58 Wis., 516, which he claims sustains the instructions under consideration. It is as follows: "Many of the questions called for facts within the knowledge of the jury, who, by order of the court, had viewed the premises and who knew the facts called for as well as the witnesses could have known them. Other questions called for the opinions of witnesses in respect to matters concerning which the jury could form an opinion as intelligently as could the witnesses. Opinions, in such a case, are entirely outside the range of authorized expert testimony. These rules are elementary." So they are, in a case like that, wherein the facts called for related entirely to the physical condition of the premises viewed, and the opinions " were outside the range of authorized expert testimony." If the jury saw that the barn mentioned in that case stood close to the railroad track, it did not require testimony of the opinion of any witness to authorize them to find it an unsafe place. And so of the rejected testimony, which was offered to show that there was no other eligible

JANUARY TERM, 1884.                    373

Washburn and others vs. Milwaukee & Lake Winnebago R. R. Co.

site for the barn on the plaintiff's farm. So, also, of the questions as to how many persons would be required to drive cattle across the track, and whether a barbed-wire fence was dangerous to horses. Any other person of ordinary intelligence, acquainted with the premises, could answer these questions as accurately as any witness. Hence, both the facts and opinions called for were within the common knowledge of the jury, or of any jury. The case does not conflict with any doctrine or rule stated herein.

The value of the lands taken for the use of the railway company and the damages to the remaining contiguous lands of the same owner resulting from such taking are matters not within the common knowledge of any jury. To determine these correctly special knowledge of many facts and conditions is required. Amongst these, knowledge of the uses to which the land might be adapted advantageously, and of the probable price for which the land might be sold — that is to say, its market value — is indispensable. It cannot be presumed that the jurors possessed this knowledge. The presumption is rather to the contrary. Before a witness can be allowed to give an opinion as to such value and the amount of such damages, it must be shown that he has the requisite knowledge which qualifies him to give an opinion. Had a witness in these cases stated that he resided remote from Oshkosh, and knew nothing of the prices of real estate ruling in that city, but had examined the lands of these plaintiffs which had been condemned, and the several tracts of which they were part and parcel, and knew thereof all that could be learned by such examination, he would certainly be incompetent to testify to the value and damages, even though he might testify that from such examination he had formed an opinion on these subjects. Presumably many of the jurors who made these assessments came from remote parts of the county, and were ignorant of the value of these lands. If so, had such jurors been offered as witnesses to

prove such values they should have been rejected. Yet, under the instructions, they were not only made silent witnesses to value, but their opinions were allowed to override the testimony of all the witnesses who testified thereto on the trial, no matter how competent they might be to give opinions concerning the compensation the plaintiff ought to recover. A rule which leads to a result so manifestly absurd and unjust cannot be tolerated for a moment.

Many cases have been cited to sustain the opposite doctrine, and these have been carefully examined. It is believed that our views do not conflict with the judgments in those cases, although some things may be said in some of the opinions with which we do not agree. We do not understand the courts to hold in any of those cases that a jury may act upon the private knowledge of one or more of their number, not testified to in court, and render a valid verdict thereon, in opposition to all of the testimony, but only that they may act upon their common or general knowledge. In that case, however, to uphold a verdict against all the testimony given on the trial, we think the court must be able to say that it is a matter within the common or general knowledge of the jury. Neither do we understand any of those cases to hold that a jury may entirely disregard the opinions of experts, in a matter in which such opinions may properly be received.

It may be that some courts have held that in cases like these, opinions of witnesses are not admissible, but this court established a different rule in *Snyder v. W. U. R. R. Co.*, 25 Wis., 60. It was said in that case, "Without the opinion of the witnesses as to the value of the land as it then was, and as to its value had not the road passed over it, the jury would have been unable to estimate the amount of damages." The rule thus established has ever since been steadily adhered to. That the unimpeached opinions of competent experts testified to by them, on a matter in which such

opinions are admissible, cannot be arbitrarily disregarded by the jury, but if uncontradicted must control the verdict, was held by this court in the late case of *Engmann v. Estate of Immel*, ante, p. 249. Also, in *Fitts v. Cream City R. R. Co.*, ante, p. 323, decided at the same time, the judgment of the county court was reversed. One ground for reversal was that the court improperly excluded expert testimony. Both opinions are by Mr. Justice Orton, and they sustain the views above expressed.

The juries in these causes might reasonably have understood the instructions to be that they were to assess the compensation to which the respective plaintiffs were entitled, according to their own knowledge, judgment, and good sense, aided by the view, and that they might do so without regard to the testimony, or in opposition thereto. We are satisfied, for the reasons before stated, that this was erroneous. We cannot say that the error did not prejudice the plaintiffs. There must therefore be a new trial of the three cases in which such error occurred. As before stated, these are the *Washburn* case and the two *Stringham* cases.

2. In the *Barker* case, a strip of land about fifty feet wide, being the rear end of the plaintiff's lot, fronting on Main street, was taken. The lot is said to have been 200 feet deep, with a store on the front of it, no part of which stood on the land taken. The plaintiff sought to show the value of the strip taken, considered as a part of the whole lot, but the court excluded the evidence, holding, as we understand, that its value was to be ascertained without reference to the balance of the lot, the same as though some other person owned such balance, the plaintiff owning only the part taken. We think this an erroneous rule. The part taken may have been, probably was, worth much more as a part of the lot than it would have been if disconnected therefrom, and the principle of just compensation to the owner seems to require that its value should be assessed as a part and parcel of the

lot. The owner has not severed it from his lot, but the company has done so against his will. Why, then, should he be compelled to accept the reduced value caused by the act of the company? It was argued that unless the rule of the circuit court be adopted, the enhanced value of the part taken, if considered as a part of the lot, may be assessed as damages for depreciation in the value of the portion of the lot not taken. The danger of a double assessment can, we think, be readily averted by a proper instruction in that behalf. It is a substantial right of the plaintiff to recover directly the full value of the land taken, because there can be no diminution therefrom on account of benefits. Whereas, if such value is included in the assessment for the depreciation of the value of the balance of the lot resulting from such taking, the whole amount thereof is liable to be absorbed by an assessment for benefits. The same error seems to have been repeated in the *Washburn* case, wherein a strip of land was taken sixty-six feet wide, adjacent to a highway, and extending across a forty-acre lot.

3. In the *Barker* case the trial court instructed the jury that they might deduct from the depreciation in the value of that portion of the plaintiff's lot not taken, resulting from the taking of the other portion thereof, the benefits accruing to the plaintiff by reason of the location of a depot on defendant's railroad near the lot. The instruction was: "If there is in this location of the depot ground a benefit to this particular property, that benefit should be set off against the damages to his other property, even though it may also benefit some property immediately surrounding, but not benefit the whole people generally." The only benefits claimed seem to be those resulting from the proximity of the lot to such depot. We think this is error. The location of a depot at a given point is a general public benefit, although, as in the case of any general benefit created by public improvements, one citizen may be more

directly and largely benefited than another. It seems to us that such benefits are of the same character as those resulting from the location and operation of the railroad itself. Such benefits are, in the nature of things, very unequally distributed, yet they are general public benefits, and hence not within the statute allowing deductions therefor. R. S., 541, sec. 1848. That statute provides only for the allowance of *special* benefits in such cases, and such is not the character of the benefit under consideration. It would seem that a benefit which may thus be allowed is one which enhances the value of the land affected by it, by improving its physical condition and adaptability for use; such as by reclaiming waste land, by draining or flowing a marsh, by aiding in the development of a water power, by dispensing with the necessity of maintaining fences, or by opening a mine or quarry, and the like. We are unable to conceive of any other kind of benefits which are not general benefits as well, and hence outside the statute.

4. Several exceptions were taken to the rulings of the circuit court admitting testimony of the prices obtained for other lands in the vicinity of those affected by these actions theretofore sold. In these condemnation cases much latitude of proof is allowed, and it has been held by this court that testimony of sales of other lands may be admitted, in the discretion of the trial court. *Watson v. M. & M. R'y Co.*, 57 Wis., 332, 350. Such testimony is admitted for the purpose of throwing some light upon the questions of value and damage which the jury are to determine, and to test the accuracy of estimates thereof made by the witnesses. To be of any value, however, it should be made to appear that such other lands were similar in character, location, and value to the land in question in the action, and that the sales were not too remote in time. We do not determine whether any testimony of this kind was or was not improperly received or rejected on the trial of any of these actions.

5. Some of these actions embrace more than one award in favor of the same plaintiff, from which separate appeals were taken to the circuit court. The court ordered a consolidation of these appeals into one action. It does not appear that any plaintiff was prejudiced thereby. We think the provisions of R. S., 750, sec. 2792, are applicable, and that it was within the discretion of the court to order the consolidation.

6. In the *Washburn* case the learned circuit judge instructed the jury, in substance, that if the present value of the lands taken was enhanced by reason of the adaptability thereof to some use to which they might be put in the future,— as, for example, if land used only for farming purposes was so situated that it might be platted into city lots, and if its present value was thereby increased,— such increased value was the proper basis for the assessment. We think this is a correct rule.

7. In the *Stringham* cases the awards of the commissioners were reduced by the jury. Costs were allowed to the defendant and deducted from the amounts of the verdicts, respectively. It is claimed that the plaintiff was entitled to costs. It is provided by statute that in these cases "costs shall be allowed to the successful party on such appeal, and, if in favor of the plaintiff, be added to the amount of the verdict; if in favor of the defendant, be deducted therefrom; and judgment shall be rendered thereon according to the rights of the parties." Sec. 1849. This statute admits of but one rational construction, which is that the plaintiff is the successful party, if on his appeal the award of the commissioners is increased, or, on the appeal of the defendant company, if it is not reduced. Otherwise the defendant is the successful party. In the *Stringham* cases both parties appealed, and the respective awards of the commissioners were reduced. The defendant was, therefore, the successful party, and entitled to costs. What the rule of costs should be in a case of cross-appeals, wherein the award of the com-

Washburn vs. Milwaukee & Lake Winnebago R. R. Co.

missioners is neither increased nor diminished, or in any other case which may be supposed, may, without detriment to the public welfare, be reserved for determination until a case arises involving such question.

*By the Court.*— The judgment of the circuit court in each of these causes is reversed, and the cause will be remanded for a new trial.