PETKUS and others, Appellants, v. STATE HIGHWAY COMMISSION, Respondent.

*September 1—September 29, 1964.*

For the appellants there was a brief by *Rieser, Stafford, Rosenbaum & Rieser* of Madison, and oral argument by *Willard S. Stafford*.

For the respondent the cause was argued by *A. J. Feifarek,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

BEILFUSS, J. Plaintiffs concede that to be successful on this appeal they must overcome Mr. Gutschenritter's testimony. They argue that his before and after-taking values were entitled to no weight because the factors he used in arriving at these values were general rather than special benefits and, therefore, not properly considered as offsets to damages. Sec. 32.09 (6), Stats.

Mr. Gutschenritter testified that the highest and best use of the land before taking was for agricultural purposes. After taking he considered the highest and best use of the land remaining to be for service facilities to the traveling public. At the corner of the property abutting the intersection of Highway 50 and Turkey Farm road there was, he thought, some potential at an indefinite time in the future for a commercial use before the taking. After the taking he thought the commercial potential of the corner was definite and immediate.

Plaintiffs argue that the Wisconsin definition of special benefits is restricted to actual physical improvement of the land, such as reclamation by draining land or other similar physical improvements. For this proposition plaintiffs rely on *Washburn v. Milwaukee & Lake Winnebago R. Co.*

(1884), 59 Wis. 364, 18 N. W. 328. In that case the plaintiff Barker owned lot 7 on Main street in Oshkosh. His lot was 200 feet deep and had a store and outbuildings located upon it. The railroad took the rear 50 feet of his lot for its right-of-way. The trial judge instructed the jury that they might take into consideration any special benefits they found by reason of the location of a railroad depot near plaintiff's property. No portion of the depot was constructed on land actually taken from Barker's property. This court reversed on the ground that the location of the depot at a given point is a benefit accruing to the public generally and that as a matter of law there could be no special benefits accruing by reason of the location of the station.

"It would seem that a [special] benefit . . . is one which enhances the value of the land affected by it, by improving its physical condition and adaptability for use; . . ." *Washburn v. Milwaukee & Lake Winnebago R. Co., supra,* page 377.

Compare with the rule of the *Washburn Case* the following instruction, approved by the court in *Milwaukee & Mississippi R. Co. v. Eble* (1851), 3 Pin. (Wis.) 334, 354:

" 'Your inquiry will be, what sum will make his farm as valuable as it would be if the railroad had passed over his neighbor's farm, and not over his? If the road is of general advantage to the neighborhood or town where the appellant lives, the appellant is entitled to share this common benefit with the rest of his fellow citizens. If, however, it is of any especial advantage to him; if it makes any particular lot more salable; if it drains some part of the land, or if it fertilizes some part, or if it opens an avenue to him not common to others,—all such and similar advantages and benefits should be considered by you, and be deducted from the damages which you may find.' "

The state argues that the rule of the *Washburn Case* is too restrictive. We are asked to substitute a definition of

special benefits based on value accruing to the land because of its proximity to the public improvement.

We recognize that the *Washburn* rule, divorced from the facts of the case, ignores today's economic realities and public necessities. In theory the definition urged by the state is acceptable; but great difficulties would arise in using it as a working rule. Thus the enhancement in value of areas in close proximity to a public improvement, such as an interstate highway, will in most instances include some increase because of the increased business activity in the community as a whole. This portion of the enhancement would be a general rather than a special benefit.

Special benefits are distinguished from general benefits in that they differ in kind rather than in degree from those which accrue to the public generally. 3 Nichols, Eminent Domain (3d ed.), p. 47, sec. 8.6203 [1]. It has been stated that any benefit, in order to be considered an offset in eminent-domain proceedings must accrue to the property itself as distinguished from the owner or his business. *Tyson Creek R. Co. v. Empire Mill Co.* (1918), 31 Idaho 580, 174 Pac. 1004; *Hamilton v. Pittsburg, B. & L. E. R. Co.* (1899), 190 Pa. 51, 42 Atl. 369; see Anno. 145 A. L. R. 7, at pages 80, 81, footnotes 250 and 251.

The able trial judge instructed the jury that a special benefit was one which enhanced the value of the land by improving its physical condition *or* adaptability for use. This instruction goes beyond the concept of special benefit as stated in the *Washburn Case, supra*. We agree that the definition of special benefits should be extended to include enhanced value because of more advantageous adaptability for use. Land which by reason of its proximity to a no-access highway interchange is enhanced in value because its highest and best use, assuming the completion of the public improvement, is immediately favorably changed or its po-

tential for favorable change in use appears by reasonable probability to be imminent, is specially benefited.

If the condemnor claims a special benefit it is the duty of the condemnor to prove to a reasonable probability the time, nature, and extent of the special benefit. In order to prove an enhancement in value by change of use, of course, the condemnor will be required to show a reasonable probability that the use will be permitted by zoning regulations, if it is not already permitted. *Hietpas v. State,* post, p. 650, 130 N. W. (2d) 248. Here those portions of the land remaining in private ownership after the taking had already been rezoned prior to the taking.

The jury obviously gave Mr. Gutschenritter's testimony more weight than that of plaintiffs' experts. Mr. Gutschenritter testified to changes of use, which we have declared to be special benefits if they enhance the value of the land. The jury's verdict is supported by the evidence.

Plaintiffs argue that the trial court erred in failing to instruct the jury that plaintiffs were entitled to just compensation. We do not consider the failure to give this instruction prejudicial error. Compensation paid for land taken and damages to the remainder in eminent domain should be just not only to the landowner but also to the state. *Bauman v. Ross* (1897), 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270.

Plaintiffs' final assignment of error is that the trial court failed to advise the jury that in no event should special benefits be allowed in excess of damages. Sec. 32.09 (3), Stats. On the record before us we conclude that such an instruction would have served only to confuse the jury. The trial court properly applied the law to the facts as found by the jury.

*By the Court.*—Judgment affirmed.