RED TOP FARMS, Plaintiff-Respondent,

v.

State of Wisconsin DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, Defendant-Appellant.

Court of Appeals

*No. 92–2461. Submitted on briefs May 18, 1993.—Decided June 23, 1993.*

(Also reported in 503 N.W.2d 354.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas B. Hartley* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James D. MacDonald* of *MacDonald & MacDonald, S.C.* of Union Grove.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   This case concerns the state's condemning a portion of Red Top Farms' land adjacent to an interstate highway in order to relocate a frontage road. The state's action resulted in additional frontage on the relocated road and an increase in the value of Red Top Farms' remaining land. Nonetheless, the trial court declined to offset the value of the remaining land against the value of the land taken after noting that the law only allows an offset if the condemnee has obtained a "special benefit." The trial court read prevailing Wisconsin law to say that unless the condemnation causes a "change" in the land's highest and best use, a special benefit cannot be found. Because the highest and best use of the land in this case was commercial before the taking and was commercial after, the trial court found no change. We disagree that a change in the highest and best use is a prerequisite to finding a special benefit. We reverse and remand for a determination based upon the proper test.

Red Top Farms is a family partnership owning a 146.74 acre farm generally located near the intersection of State Highway 20 and Interstate 94 in Racine

county. The state Department of Transportation acquired 3.622 acres of the farm for the purpose of relocating the existing I–94 frontage road to the east.

Prior to the taking, the property was bounded on the north by Highway 20. The property had two access points along that highway. The property was bounded on the east and south by farmland. It was bounded on the west by various commercial properties which separated the property from the I–94 frontage along its southwesterly end.

Although the land was zoned agricultural and was being farmed at the time of the taking, the partnership actively pursued developing and selling its property for commercial use; it sold three lots along Highway 20, one of which was used to build a McDonald's which the experts agreed was a magnet for other commercial businesses. The appraisal experts all agreed that while the property was currently zoned and used as agricultural property, its highest and best use was commercial.

The state pointed out to the trial court that the partnership had been provided with 1100 feet of frontage along the newly relocated road. It further pointed to its expert's testimony that the before value of the farm was $1,470,000 and that its after value was $1,790,000, an increase of $330,000. It argued that the relocation immediately enhanced the commercial value of the property. The state asserted that a "special benefit" had thus been conferred upon the partnership and the just compensation was therefore zero.

The trial court held that whether the relocation "enhanced" the property was not the benchmark for determining a "special benefit." Rather, it construed *Petkus v. State Highway Comm'n*, 24 Wis. 2d 643, 648–49, 130 N.W.2d 253, 255–56 (1964), and related

cases to say that the condemnation must either cause a change in the use or increase the adaptability for a change in use before it may be termed a "special benefit." Because the highest and best use both before and after the taking was commercial, the trial court held that while there had been a change "in degree," it was not a change "in kind." The trial court granted compensation to the partnership.

The state's appeal takes issue with the trial court's reading of *Petkus* and related cases. Essentially, the state is arguing that the trial court misread the law. The issue thus presents a question of law which this court is required to review *de novo* without deference to the trial court. *See Matz v. Matz*, 166 Wis. 2d 326, 329, 479 N.W.2d 245, 246 (Ct. App. 1991).

We begin by reviewing the concept behind the term "special benefit" as it relates to condemnation cases. Not all takings are disadvantageous to the property owner. Sometimes the land not taken in eminent domain proceedings has enhanced market value as a result. *See Hietpas v. State,* 24 Wis. 2d 650, 656, 130 N.W.2d 248, 251 (1964). Section 32.09(3), Stats., recognizes that special benefits may occur as a result of condemnation and requires that these benefits be considered when determining whether compensation is due as a result of the taking. The statute reads as follows:

> Special benefits accruing to the property and affecting its market value because of the planned public improvement shall be considered and used to offset the value of property taken or damages under sub. (6), but in no event shall such benefits be allowed in excess of damages described under sub. (6).

*Id.* This statute therefore permits setoff of benefits against the compensation owed for that part of the parcel which was taken, as well as against the compensation owed for damages to the remaining parcel. *See* Note, *Eminent Domain—Just Compensation—Special Benefits*, 1966 WIS. L. REV. 1225, 1225 [hereinafter *Eminent Domain*].

The supreme court interpreted the statute in *Hietpas* to say that while the burden of proof as to damages in eminent domain rests upon the owner, the existence of special benefits is a matter of affirmative defense. As to such benefits, the burden of proof is upon the condemnor. *Hietpas*, 24 Wis. 2d at 656, 130 N.W.2d at 251.

We here note that the statute permits setoffs only for "special" benefits, not for all benefits resulting in appreciation in the land remaining following eminent domain proceedings. The law in Wisconsin has recognized the difference between "general" benefits and "special" benefits. As far back as *Milwaukee & Miss. R.R. v. Eble*, 3 Pin. 334, 358 (1851), our supreme court said that "common advantages to the neighborhood were not chargeable as benefits . . . but only such as were peculiar to [the particular parcel]." In *Washburn v. Milwaukee & Lake Winnebago R.R.*, 59 Wis. 364, 376–77, 18 N.W. 328, 334 (1884), the court held that the proximity of a depot to the remainder was not a special benefit. The court ruled that a special benefit was one "which enhances the value of the land affected by it, by improving its physical condition and adaptability for use." *Id.* at 377, 18 N.W. at 334. The court suggested that various physical changes to the land such as reclaiming wasteland, draining marshlands, aiding in the development of water power, and similar changes, might be special benefits. The emphasis was

upon physical changes in the land which would increase utility. *See Eminent Domain* at 1226.

In *Petkus*, the court removed the requirement of physical change as a necessary element of a special benefit. *See Petkus*, 24 Wis. 2d at 648, 130 N.W.2d at 255. The case involved the taking of eleven and one-half acres of the plaintiffs' forty-eight acre parcel for highway relocation and widening incident to the construction of an interchange. The plaintiffs would have access to the highway at the corner of the relocated highway and a road known as "Turkey Farm Road." The state's expert testified that the value after the taking would be higher than the value before the taking. The expert opined that the highest and best use of the property before the taking was agricultural, while after the taking it was commercial. This was based upon his position that while there was some potential for commercial use before the taking, the commercial potential of the corner was definite and immediate after the taking.

The trial court in *Petkus* instructed the jury that "a special benefit was one which enhanced the value of the land by improving its physical condition *or* adaptability for use." *Id.* The plaintiffs contended on appeal, citing *Washburn*, that the court erred in instructing the jury because special benefits required the appreciation to be due to an advantageous physical change in the property. *Id.* at 646–47, 130 N.W.2d at 254–55. The state, on the other hand, argued that the *Washburn* rule was too restrictive; it urged the court to take the position that "any benefits that are peculiar to the position the property enjoys in relationship to a public improvement which changes its adaptability for profitable use and enhances the market value of the property remaining, are special benefits." *See Eminent Domain*

827

at 1227. The supreme court interpreted this as a request to define special benefit "based on value accruing to the land because of its proximity to the public improvement." *Petkus*, 24 Wis. 2d at 648, 130 N.W.2d at 255.

Although the court accepted the "proximity" test in theory, it rejected it as a working rule because the test included enhancement in value due to increased business activity in the community as a whole—a general rather than a special benefit. The court stated that "special benefits" are distinguished from general benefits in that they "differ in kind rather than in degree from those which accrue to the public generally." *Id*. The court then stated:

> [T]he definition of special benefits should be extended to include enhanced value because of more advantageous adaptability for use. Land which by reason of its proximity to a no-access highway interchange is enhanced in value because *its highest and best use, assuming the completion of the public improvement, is immediately favorably changed* or its potential for favorable change in use appears by reasonable probability to be imminent, is specially benefited.

*Id* . at 648–49, 130 N.W.2d at 255–56 (emphasis added). Because the highest and best use of the land in the *Petkus* case was agricultural before the taking and commercial after, the supreme court concluded that a special benefit had been bestowed.

The trial court in this case seized upon the emphasized portion of the above quoted passage in *Petkus* to rule that a change in use or potential for change in use must be demonstrated before a special benefit can be found. It read *Petkus* to say that this is a change "in

kind" whereas enhancement value of an area in close proximity to a public improvement due to increased business activity was one of "degree." It cited our opinion in *Goodger v. City of Delavan,* 134 Wis. 2d 348, 352, 396 N.W.2d 778, 780 (Ct. App. 1986), where we held that a special benefit, for assessment case purposes, means an "uncommon advantage" which accrues to a property owner in addition to the benefit enjoyed by other property owners in the community. The trial court then went on to reason that the Red Top Farm property certainly became more valuable with the addition of 1100 feet of frontage, but that an increase in value alone does not confer a specific benefit.

The state argues here what it argued to the trial court. It claims that there is "simply no legal requirement in Wisconsin that the highest and best use must change in order for a special benefit to be conferred on the remainder property." It asserts that the trial court misunderstood the holding in *Petkus* relating to general benefits as opposed to special benefits. The state defines general benefits to mean those benefits accruing to all the property owners in the vicinity of the project because the highway project increases traffic. The state cites 3 NICHOLS, EMINENT DOMAIN § 18.19(1) (3d ed. 1965), to say that, by comparison, a special benefit accrues directly and proximately to the particular land.

The state then goes on to argue that Red Top Farms' increase in property value is not simply due to increased traffic. Rather, the 1100 feet of added frontage and increased public access have given the partnership a direct and proximate enhancement not accruing to the other property owners in the vicinity. This is an "uncommon advantage" which is in addition

to the benefits provided to all the other property owners. As such, it is a special benefit.

The state further argues that Wis J I—Civil 8115 correctly states the current law on special benefits as derived from *Petkus* and its progeny. The instruction states:

> A special benefit, as used in the foregoing instruction, is a benefit which in fact enhances the value of the land not taken either because the public project improves the physical condition of the remaining land, or because the public project, by its proximity to the remaining land, *immediately increases the market value of that land for an existing use or for a different and more profitable use.* [Emphasis added.]

The state concludes that a change in the use is not a prerequisite to finding a special benefit. If anything, a change in the existing use is only a factor that the factfinder may take into consideration in determining a special benefit. The key, according to the state, is not whether the existing use has been changed, but whether the condemnation has benefited the condemnee "in addition" to that benefit accorded to other landowners in the area. Thus, the existing use can remain the same, but there may still be a special benefit if the market value of the property under the existing use is immediately increased.

We largely agree with the state. As we read *Petkus*, the supreme court made three major statements. First, the court rejected the condemnee's reliance upon the *Washburn* rationale that a physical change to the property was a condition precedent to finding a special benefit. Second, the court likewise rejected the state's argument that mere proximity to the improvement is a special benefit when it is shown that, because of that

proximity, the condemnee's remaining land goes up in value. Third, the court decided the proper test. In doing so, it relied heavily upon the circuit court judge's instruction to the jury and, in fact, adopted that instruction. The instruction said that "a special benefit was one which enhanced the value of the land by improving its . . . adaptability for use." The instruction did not say "change" the use. It said "improving its . . . adaptability for use."

After citing the trial court's instruction, the court then said, "We agree that the definition of special benefits should be extended to include enhanced value because of more *advantageous adaptability for use.*" *Petkus*, 24 Wis. 2d at 648, 130 N.W.2d at 255 (emphasis added). It was only then that the supreme court talked about a change in use or imminent change in use being a special benefit. We do not attach the same significance to this part of the opinion as did the trial court. Instead, we note that the *Petkus* case in fact involved a change in use from agricultural to commercial. We read the supreme court's language therefore to be nothing more than an application of the facts in that case to the law which it had just decided was to be the framework for finding whether a special benefit existed. The supreme court was simply saying that a change in the highest and best use was *an example* of "more advantageous adaptability for use."

Our reading of *Petkus* comports with Wis J I—Civil 8115. While we acknowledge that civil jury instructions are not law in this state unless specifically adopted by an appellate court, they are looked upon favorably by appellate courts. *See State v. Danforth*, 129 Wis. 2d 187, 201, 385 N.W.2d 125, 131 (1986). Parenthetically, it is interesting to note that the circuit court judges in both the *Petkus* and *Hietpas* decisions

were on the civil jury instructions committee at the time the instruction was promulgated in 1966. We further note that the instruction given in *Hietpas* was almost identical to the one given in *Petkus*. In both cases, the instructions were much like Wis J I—Civil 8115. Neither instruction made change of use a prerequisite. Both made enhanced adaptability of use a prerequisite.

We also suspect that the *Petkus* court was departing from views held by some of the major commentators of that day. Nichols, for instance, saw the following classification of benefits: (1) benefits peculiar to a particular estate by reason of its direct relation to the improvement; (2) local or neighborhood benefits, or those accruing to a well-defined and limited part of a city or town by reason of its proximity to the improvement; and (3) general benefits, or those which affect the community as a whole and perhaps raise the value of the land in an entire city or town. 3 NICHOLS, § 8.6202, at 65. According to Nichols, special benefits involved the first two categories. In our view, the *Petkus* decision holds that special benefits involve only the first category, since the second test goes to mere proximity. That first category, however, is not marked by a prerequisite of a change in use. The category is marked by, as the court in *Hietpas* wrote, "direct, immediate, and certain [benefits], both as to time and place; not remote or speculative." *Hietpas*, 24 Wis. 2d at 656, 130 N.W.2d at 251–52.

Thus, we disagree with the trial court that change in use is a necessary prerequisite to a finding of special benefit. Rather, the real issue is whether Red Top Farms has gained a benefit not shared by any other parcel; that is, something peculiar to it and not to any

832

other parcel. If the benefit relied upon by the state is one that the whole community shares, like increased commercial traffic, then it is a benefit enhancing the property in "degree." *See State v. Colon,* 194 N.W.2d 574, 578 (Minn. 1972). If the benefit relied upon by the state is one that is shared by other landowners in the community, then it is also one of degree. If the benefit is shared by those landowners in proximity to the improvement, that too is a matter of degree. If, however, the benefit relied on by the state is peculiar—one that gives an uncommon advantage to the property—then it is a benefit not of degree, but of kind. That is how we read *Petkus.*

The state posits that the 1100 extra feet of frontage is the kind of change which enhances the adaptability for commercial use of the condemnee's property. Red Top Farms submits that the 1100 feet makes it easier to sell the commercial property, but argues that the commercial nature of the area already was present even before the taking. It notes that it already had ingress and egress to the highway even before the taking. It further comments that McDonald's is already in the area and that this enterprise is a drawing card for other businesses. It asserts that the extra 1100 feet of frontage has therefore not really given it something that it did not already enjoy. It argues that the extra 1100 feet merely makes it easier to sell the advantage it already had.

It may be that the trial court may yet find the 1100 feet does not give Red Top Farms a peculiar advantage it did not already enjoy and that, while the value of the land has gone up, the value is due mainly to increased traffic and to the surrounding businesses that have recently arrived. We reverse and remand to the trial court so that it may use the proper test in determining

whether Red Top Farms' remaining land value has been directly enhanced by an uncommon advantage unlike that of any other landowner by reason of the public improvement.

*By the Court.*—Judgment reversed and cause remanded with directions.