COURT OF APPEALS
DECISION
DATED AND FILED

**November 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2021AP952-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CM2090

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

　　　PLAINTIFF-RESPONDENT,

　V.

THOMAS LOUIS GIEGLER,

　　　DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARY M. KUHNMUENCH, JEAN M. KIES and REBECCA KIEFER, Judges. *Order affirmed in part; reversed in part and cause remanded with directions*.

¶1 WHITE, J.[1] Thomas Louis Giegler appeals a judgment of conviction entered following a jury trial on one count of knowingly violating a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20).

(continued)

temporary restraining order (TRO) and one count of disorderly conduct, both counts with the habitual criminality penalty enhancer and domestic abuse assessment. Giegler moved for postconviction relief and the circuit court concluded that a new trial was warranted because the record did not reflect that his waiver of counsel was knowingly, intelligently, and voluntarily made. However, the circuit court denied his motion for a judgment of acquittal on the charge of knowingly violating the TRO. Because we conclude that the evidence presented by the State was insufficient to prove beyond a reasonable doubt that Giegler knowingly violated the TRO, we reverse and remand to the circuit court with directions to enter a judgment of acquittal of the TRO charge. We do not disturb the remainder of the circuit court's order for a new trial on count two for disorderly conduct.

## BACKGROUND

¶2　We recite the relevant facts from the criminal complaint and the trial testimony. On July 18, 2017, H.F.'s petition for a TRO against Giegler was granted. On July 29, 2017, West Allis police responded to a call that Giegler had shown up at H.F.'s residence in violation of the TRO. On August 3, 2017, the State charged Giegler with two counts: (1) knowingly violating a TRO, and (2) disorderly conduct, both counts with enhancers for habitual criminality, use of a dangerous weapon, and domestic abuse assessment.

---

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

While Giegler appeals both the judgment and order, we address only the order because, as discussed later in this opinion, the circuit court vacated the judgment and ordered a new trial.

¶3      The case proceeded to trial in October 2018 with Giegler representing himself.  On the first day of trial, the State informed the trial court on the record that H.F. had died of an unrelated cause approximately a month before trial.  The trial court[2] then granted the State's motion to dismiss the "using a dangerous weapon" enhancer because H.F. would be unable to testify.[3]

¶4      We now recite the evidence and testimony presented at trial relevant to the issue of whether Giegler knew he had been served with the TRO.  H.F.'s neighbor testified that H.F. approached him after the TRO was issued and gave the neighbor a copy of the TRO.  Officer Kevyn Mussati testified that he arrived at the house where H.F. was present on July 29, 2017, and he found Giegler in the bedroom.  The State asked Officer Mussati about the police call:

> [THE PROSECUTOR:] Okay. And did you prior to arriving confirm that there was, in fact, a restraining order in place?
>
> [OFFICER MUSSATI:] I did, yes.
>
> [THE PROSECUTOR:] And did you also confirm that that's a restraining order that had been served?
>
> [OFFICER MUSSATI:] Yes.

The officer reviewed two trial exhibits:  a copy of the TRO and the West Allis Police Department Domestic Violence Supplementary Incident Report.

¶5      The State called Officer Jesse Maxwell, who testified about the general process of serving a restraining order:

---

[2]  The Honorable Mary M. Kuhnmuench presided over Giegler's trial.

[3]  Further, the court dismissed with prejudice a separate case for witness intimidation that alleged other people called H.F. on Giegler's behalf.  The State requested dismissal without prejudice, but the trial court found the case could not proceed without H.F.'s testimony.

[OFFICER MAXWELL:] In the past when I've [served a TRO], I make contact with the individual, I identify who they are, provide them with whatever the document is. In our case it's usually a restraining order and then we have our dispatch contact the Milwaukee County Sheriff's Department and advise them that they were served.

BY MR. GIEGLER: So, when you serve that document, are you face to face with the individual that you're actually serving?

[OFFICER MAXWELL:] In the times I've done it, yes.

[MR. GIEGLER:] Did that individual have to sign the document saying that they were served and received that, sir?

[OFFICER MAXWELL:] For the times I've done it, no.

[MR. GIEGLER:] So there's no documentation that an individual was served that—besides just your word that you served them; is that correct?

[OFFICER MAXWELL:] In the cases I've done it, yes.

….

THE COURT: And why is that, sir?

[OFFICER MAXWELL:] Because we physically see them and it's—we're sworn officers saying that we served that person.

THE COURT: And do you that through an affidavit, sir?

[OFFICER MAXWELL:] Yes.

THE COURT: Thank you.

Officer Maxwell testified that he was not involved in the service of the TRO against Giegler and that he did "not personally" ask Giegler any questions about the restraining order. Officer Maxwell testified that "[a]t the point that I

4

responded the only information I had from dispatch was that there was a protection order in place and that [Giegler] had been served."

¶6    The jury returned guilty verdicts on both counts. The sentencing court[4] sentenced Giegler to one year of initial confinement and one year of extended supervision on each count, to be served concurrently with each other, but consecutively to any other sentence.[5]

¶7    In May 2020, Giegler, with counsel, filed a motion for postconviction relief pursuant to WIS. STAT. § 809.30, requesting that the circuit court: (1) vacate the habitual criminality enhancers and commute his sentences to the maximum penalties without the enhancer; (2) acquit him on count one for knowingly violating the TRO because the State did not present sufficient evidence to prove his knowledge; (3) if the court acquitted on count one, order a new trial on count two because the trial court did not adequately determine that he knowingly, intelligently and voluntarily waived his right to counsel; (4) if the court did not acquit on count one, order a new trial on both counts because of the waiver of right to counsel issue; (5) if the court did not grant a new trial, vacate the domestic abuse surcharge on count two; or (6) if the court acquitted on count one, but did not grant a new trial on count two or relief from the repeater penalty enhancer, resentence him on count two.

---

[4] The Honorable Jean M. Kies sentenced Giegler.

[5] Giegler was on extended supervision at the time of the incident and he resumed serving his revocation sentence after his arrest.

¶8     In May 2021, the circuit court[6] denied Giegler's request to be acquitted of count one.  Nevertheless, the court determined a new trial was warranted because the trial court's colloquy with Giegler did not satisfy the requirements to waive the right to counsel and establish Giegler was competent to represent himself.  *See State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997).[7]  The circuit court declined to address Giegler's additional issues related to the enhancers, surcharges, and sentencing raised in his postconviction motion.

¶9     Giegler appeals the circuit court's denial of a judgment of acquittal of count one, arguing that the State did not offer sufficient evidence that he knowingly violated the TRO.

## DISCUSSION

¶10     "In order to overcome the presumption of innocence accorded a defendant in a criminal trial, the [S]tate bears the burden of proving each essential element of the crime charged beyond a reasonable doubt."  *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).  "It is the function of the trier of

---

[6] The Honorable Rebecca Kiefer issued the postconviction decision.

[7] In *Klessig*, our supreme court set forth:

> To prove such a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him.  If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel.

*State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997).

fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 506. "An inference is reasonable if it can fairly be drawn from the facts in evidence." *State v. W.T.D.*, 144 Wis. 2d 621, 636, 424 N.W.2d 707 (1988). An "inference cannot be based on speculation or conjecture[.]" *Id.*

¶11 When this court reviews a challenge to the sufficiency of the evidence to support a conviction, we may not substitute our judgment for that of the jury "unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *Poellinger*, 153 Wis. 2d at 507. "[W]e view the evidence in the light most favorable" to a challenged finding of fact. *Id.* at 503.

¶12 For count one—knowingly violating a domestic abuse order—temporary restraining order, contrary to WIS. STAT. § 813.12(8)(a), the State must prove three elements beyond a reasonable doubt: (1) a TRO was issued against Giegler in protection of H.F. under § 813.12; (2) Giegler committed an act that violated the terms of the TRO; and (3) Giegler knew that the temporary restraining order had been issued and knew that his acts violated its terms. *See* WIS JI—CRIMINAL 2040.

¶13 Because the first two elements are unchallenged, our inquiry focuses on whether the evidence at trial was sufficient to prove that Giegler knew his conduct was restrained by the TRO. The State relies on the testimony of Officer Mussati that prior to arriving at the house he confirmed that there was a TRO against Giegler in place and that the TRO had been served. The State also relies on the testimony of Officer Maxwell that the "information [he] had from dispatch

7

was that there was a protection order in place and that [Giegler] had been served." The State additionally points to H.F.'s neighbor's testimony that H.F. had given the neighbor a copy of the TRO.

¶14 Giegler argues that the State did not produce sufficient evidence to demonstrate beyond a reasonable doubt that he knew about the TRO on July 29, 2017, and therefore, knowingly violated the TRO when he went to the house he had shared with H.F. We agree. The jury was instructed that "[k]nowledge must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge." WIS JI—CRIMINAL 2040. Here, the record does not reflect that there was direct or circumstantial evidence that Giegler knew about the TRO. As Giegler argues, the State did not move to admit into evidence an affidavit of proof of service of the TRO against Giegler. Further, the State did not produce the officer who served the TRO on Giegler or even the dispatch officer who informed Officers Mussati and Maxwell about the TRO.

¶15 The only evidence the State produced to prove that Giegler knew that his conduct was restrained by the TRO consisted of hearsay that the police officers were informed that Giegler had been served. There were two exhibits offered at trial; neither showed that service was accomplished. At best, the jury may have speculated that Giegler knew about the restraining order; however, speculation is not enough. *See W.T.D.*, 144 Wis. 2d at 636. Even viewing the facts and reasonable inferences of those facts in the light most favorable to the jury's verdict, the State did not offer sufficient credible evidence to allow the jury to find beyond a reasonable doubt that Giegler knew his conduct was restrained by the TRO. *See Poellinger*, 153 Wis. 2d at 501. Therefore, we conclude that the State failed to prove the third element of count one, knowingly violating the TRO.

8

Accordingly, Giegler's challenge to the sufficiency of the evidence to support count one prevails.

## CONCLUSION

¶16 We conclude that because the State presented insufficient evidence at trial to support count one for knowingly violating a TRO, the circuit court erred when it denied Giegler's motion for postconviction relief in the form of a judgment of acquittal of count one. We reverse this part of the circuit court's postconviction order and remand with instructions to enter a judgment of acquittal of count one. We do not disturb the remainder of the postconviction order; the circuit court's decision granting Giegler a new trial on count two remains in force.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.