# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP474 |
| COMPLETE TITLE: | CED Properties, LLC, |
| |              Plaintiff-Appellant-Petitioner, |
| |     v. |
| | City of Oshkosh, |
| |              Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 767, 895 N.W.2d 855
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 3, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Winnebago |
|   JUDGE: | John A. Jorgensen |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents, joined by A.W. BRADLEY, J. (opinion filed) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Erik S. Olsen*, *Joseph J. Rolling*, *Andrew D. Weininger*, and *Eminent Domain Services*, *LLC*, Madison. There was an oral argument by *Erik S. Olsen.*

For the defendant-respondent, there was a brief filed by *Richard J. Carlson* and *Silton Seifert Carlson*, *SC*, Appleton. There was an oral argument by *Richard J. Carlson.*

2018 WI 24

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP474
(L.C. No. 2015CV70)

STATE OF WISCONSIN         :        IN SUPREME COURT

CED Properties, LLC,

    Plaintiff-Appellant-Petitioner,

    v.

City of Oshkosh,

    Defendant-Respondent.

**FILED**

**APR 3, 2018**

Shelia T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and the cause remanded to the circuit court.*

¶1 REBECCA GRASSL BRADLEY, J. CED Properties, LLC (CED) challenges the special assessment imposed by the City of Oshkosh (City)[1] following the reconfiguration of a traditional traffic light intersection into a roundabout.[2] We review the unpublished court of appeals decision, CED Properties, LLC v. City of

---

[1] The City imposed the special assessment on other affected commercial property owners, but this case involves only CED's challenge to the special assessment.

[2] Roundabout, American Heritage Dictionary of the English Language (5th ed. 2011) ("A traffic circle.").

Oshkosh, No. 2016AP474, unpublished slip op. (Wis. Ct. App. Jan. 18, 2017), affirming the circuit court's grant of summary judgment in favor of the City.[3]  CED raises two issues: (1) whether the term "special benefits" in Wisconsin's eminent domain statute has the same meaning in Wisconsin's special assessments statute, and if so, whether the City's denial of the existence of any special benefits during the earlier eminent domain proceeding precludes the City from asserting the conferral of special benefits in the later special assessment action; and (2) whether CED raised genuine issues of material fact precluding summary judgment.

¶2  We hold that "special benefits" has the same meaning under both statutes.  Although the failure to raise the issue of special benefits in an eminent domain action does not necessarily preclude a municipality from later doing so in a special assessment action, a municipality's admission that special benefits are non-existent in the context of an eminent domain proceeding constitutes relevant evidence in a later challenge to the special assessment.

¶3  We further hold the court of appeals erred in concluding CED failed to overcome the presumption of correctness afforded the City's special assessment and to establish sufficient genuine issues of material fact.  The affidavit of CED's expert raises material factual issues in dispute,

---

[3] The Honorable John A. Jorgensen, Winnebago County, presiding.

2

including whether the roundabout project conferred a local rather than a general benefit, whether the project conferred any special benefits on CED's property or actually diminished its value, and whether the amount of the special assessment was fair and equitably apportioned among the commercial properties involved as well as proportionate to the benefits accruing to the property. Because we conclude CED overcame any presumption of correctness by presenting competent evidence to the contrary, we reverse the decision of the court of appeals and remand to the circuit court for a trial.

## I. BACKGROUND

¶4 CED owns property located on the northeast corner of the intersection of United States Highway 45 and State Highway 76. Locally, United States Highway 45 is called Murdock Avenue and State Highway 76 is called Jackson Street. A Taco Bell franchise has operated on the property since 1992.

¶5 In January 2008, the City and the Wisconsin Department of Transportation entered into an improvement plan agreement to reconstruct and install a multi-lane roundabout at the Jackson-Murdock intersection. The reconstruction plan proposed the removal of traffic signals, concrete and asphalt paving, concrete driveway approaches, sidewalk replacement and repair, sanitary and storm sewer laterals, and the improvement of streetscaping and landscaping. The plan required the City to take about six percent of CED's property to ensure enough space to build the roundabout. The City used its power of eminent domain under Wis. Stat. ch. 32 to do so. In April 2012, after

3

lengthy litigation, the City and CED agreed the City would pay CED $180,000 just compensation for the taking. During that litigation, the City filed with the circuit court the appraisal of its expert, Patrick Wagner. According to Wagner's report, the City's partial taking caused CED's property to decrease in value by $38,850, and he testified during his deposition that the taking did not confer any "special benefits" on CED's property under Wis. Stat. § 32.09(3) (2015-16).[4]

¶6  In July 2010, the City passed a resolution that levied special assessments upon CED's property and other commercial properties pursuant to its police power under Wis. Stat. § 66.0703(1)(a)[5] to help fund the intersection improvement

---

[4] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

Wisconsin Stat. § 32.09(3) provides:

Special benefits accruing to the property and affecting its market value because of the planned improvement shall be considered and used to offset the value of property taken or damages under [Wis. Stat. § 32.09(6)], but in no event shall such special benefits be allowed in excess of damages described under sub. (6).

[5] Wisconsin Stat. § 66.0703(1)(a) provides:

(a)  Except as provided in s. 66.0721, as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or

(continued)

4

project. CED challenged the special assessment, but the City argued the challenge was untimely. That dispute ended after this court ruled that CED's appeal of the assessment was timely and its complaint sufficient; we instructed the circuit court to grant summary judgment in favor of CED. See CED Properties, LLC v. City of Oshkosh, 2014 WI 10, 352 Wis. 2d 613, 843 N.W.2d 382 [hereinafter "CED I"].[6]

¶7    Following this court's decision in CED I, the City re-assessed CED pursuant to Wis. Stat. § 66.0703(10),[7] imposing a

---

improvement out of the proceeds of the special assessments.

Paragraph (b) provides where "an assessment represents an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village."

[6] CED asserted in CED I that the improvement project had not conferred special benefits under Wis. Stat. § 66.0703(1)(a), but this substantive issue was not addressed or resolved. See CED Properties, LLC v. City of Oshkosh, 2014 WI 10, 352 Wis. 2d 613, 843 N.W.2d 382.

[7] Wisconsin Stat. § 66.0703(10) provides:

If the actual cost of any project, upon completion or after the receipt of bids, is found to vary materially from the estimates, if any assessment is void or invalid, or if the governing body decides to reconsider and reopen any assessment, it may, after giving notice as provided in sub. (7)(a) and after a public hearing, amend, cancel or confirm the prior assessment. A notice of the resolution amending, canceling or confirming the prior assessment shall be given by the clerk as provided in sub. (8)(d). If the assessments are amended to provide for the refunding of special assessment B bonds under s. 66.0713(6), all direct and indirect costs reasonably attributable to

(continued)

special assessment of $19,486.36 based on CED's frontage along Jackson Street and $20,616.67 based on CED's frontage along Murdock Avenue for a total special assessment of $40,103.03.[8] The City issued a final resolution authorizing the re-assessment and a report describing the special benefits conferred upon CED as: "a substantial increase in accessibility, which includes safer, lower cost, and shorter travel times for customers, deliveries and employees. These special benefits are different in kind than those enjoyed by the public for through traffic." The City said additional special benefits were conveyed by correcting sidewalk defects in sections contiguous with the property, which "provide[d] a safe corridor for pedestrians to access the site," and by improving the streetscape, which enhanced the property's overall aesthetics.

¶8 The City's report further explained that the project improved the intersection's primary function of moving and carrying traffic (a "community benefit") as well as the secondary benefit of providing access to traffic flow (a "special benefit" to abutting property owners, like CED). According to the City, this intersection served about 25,000

---

the refunding of the bonds may be included in the cost of the public improvements being financed.

[8] The entire project cost $4,060,000. The Wisconsin Department of Transportation paid $2,610,750. The City paid $1,449,250, but specially assessed the affected property owners $307,118.72 of that amount. The $40,103.03 charged to CED equaled 0.99 percent of the total entire project cost.

vehicles each day, with 1,973 (or about 7.9 percent) of those vehicles tied to stops at the Taco Bell on CED's property. The City's analysis indicated that before the roundabout, it took a vehicle 37.9 seconds to travel through the intersection; this was reduced to 10.5 seconds per vehicle after the project.

¶9 CED again appealed the special assessment to the circuit court, claiming the project conferred only community or general benefits of better traffic flow and no local or special benefits at all. CED further claimed the assessment was unreasonable because it had no nexus between the linear feet upon which the property was assessed and the alleged benefits conferred.

¶10 The City moved for summary judgment. It acknowledged the improvement conferred public benefits, but asserted that the improvement also conferred special benefits assessable against CED, that the resulting assessment was reasonable, and that CED failed to overcome the presumption of correctness afforded the City's assessment.

¶11 CED opposed the motion, arguing that because the City conceded "special benefits" did not accrue to CED's property during the Wis. Stat. ch. 32 eminent domain action, the City forfeited the opportunity to assert "special benefits" during the later special assessment appeal. Alternatively, CED argued that even if asserting special benefits during the eminent domain action was not a condition precedent to asserting them during the ch. 66 special assessment action, the improvements were not local in nature, no special benefits accrued, and the

7

assessments' costs were unreasonably apportioned among the abutting property owners. CED also argued that the special assessment violated the equal protection clause of the Wisconsin and United States Constitutions.[9]

¶12 In support of its arguments, CED submitted the affidavit and appraisal of its expert witness, James C. Johnson. According to his affidavit, Johnson is a certified general appraiser who was previously employed by the Wisconsin Department of Transportation as an "access specialist." During his time with that department, he "served on the committee that established the 'Special Benefits Criteria' which were implemented and used by the [department] for assessing whether benefits were general benefits or special benefits." He cites to cases on which he acted as an "access expert . . . on the issue of reasonable access." He served as the department's "litigation coordinator," training the department's consultant appraisers "on evaluating general vs. special benefits." "[A]ll requests for changes in the amount of compensation due to landowners in the southwest region were reviewed by [Johnson] . . . includ[ing] consideration of any access issues, general benefits, and special benefits."

¶13 Having personally inspected CED's property, Johnson believed that "absolutely no benefit to [CED's property], let alone a special benefit" arose from any of the improvements. In

---

[9] CED does not make this argument before this court.

fact, Johnson opined that the roundabout was a detriment to CED's property, explaining: "Retail fast food sites like the subject are more valuable when they are on controlled intersections" since "[g]reater time at the intersection is desirable for the subject because the subject is an impulse stop." According to Johnson's appraisal, as of October 29, 2009, the roundabout project caused the fair market value of CED's property to decrease $251,370.

¶14 CED also submitted an affidavit from its attorney, attaching, as material here, Wagner's appraisal and the page from Wagner's deposition where he said no special benefit accrued to CED's property in the eminent domain action. CED asserted in its brief opposing summary judgment that Wagner's appraisal and testimony precluded the City from later specially assessing CED for "special benefits."

¶15 The circuit court granted the City's motion for summary judgment. It did not address whether genuine issues of fact remained regarding the existence of a special benefit, whether the benefit was local or general, or whether the assessment was reasonable.

¶16 CED appealed and the court of appeals affirmed, with Judge Mark Gundrum dissenting. CED Properties, LLC v. City of Oshkosh, No. 2016AP474, unpublished slip op. (Wis. Ct. App. Jan. 18, 2017). The court of appeals' majority ruled CED failed to prove "a genuine issue of material fact to show that it has overcome the presumption of correctness" and failed to prove the special assessments were not reasonable. Id., ¶29. Judge

9

Gundrum disagreed, concluding that CED's expert's affidavit setting forth reasons why the project made vehicle access to CED's property "worse, not better" was sufficient evidence that "<u>could</u> support a finding by a reasonable jury that a special benefit does not exist." <u>Id.</u>, ¶34 (Gundrum, J. dissenting) (quoting <u>First State Bank v. Town of Omro</u>, 2015 WI App 99, ¶20, 366 Wis. 2d 219, 873 N.W.2d 247). Judge Gundrum said "a jury issue exists as to whether the Jackson-Murdock Project conferred special benefits on the CED property," and the "matter should be returned to the circuit court for a jury trial on the issue." <u>Id.</u>, ¶¶30, 34. CED petitioned for review in this court, which we granted.

## II. STANDARD OF REVIEW

¶17 This case requires us to review a grant of summary judgment against CED. "We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals." <u>Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.</u>, 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285. The law governing summary judgment is well-known. Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Id.</u>

10

¶18 We apply a two-step test to make this determination. Garza v. Am. Transmission Co. LLC, 2017 WI 35, ¶21, 374 Wis. 2d 555, 893 N.W.2d 1 (citing Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987)). First, this court asks if the plaintiff stated a claim for relief. Id. Second, this court applies Wis. Stat. § 802.08(2), asking if any factual issues exist that preclude a grant of summary judgment. Id. It is undisputed here that CED's complaint states a claim for relief. The parties' dispute focuses on whether CED presented sufficient evidence to create any material issues of fact to overcome the presumption of correctness.

¶19 "Summary judgment is a drastic remedy; therefore, the moving party must clearly be entitled to judgment as a matter of law." Genrich v. City of Rice Lake, 2003 WI App 255, ¶6, 268 Wis. 2d 233, 673 N.W.2d 361 (citing Vill. of Fontana-On-Geneva Lake v. Hoag, 57 Wis. 2d 209, 214, 203 N.W.2d 680 (1973)). In reviewing a grant of summary judgment, we view the facts in a light most favorable to CED, the nonmoving party. See Genrich, 268 Wis. 2d 233, ¶6. Any doubts as to whether a genuine issue of material fact exists should be resolved against the City as the moving party. Id.

¶20 This case also involves the interpretation and interplay of two statutes, Wis. Stat. §§ 32.09 and 66.0703(1)(a). The interpretation of statutes presents a question of law we review de novo. State v. Talley, 2017 WI 21, ¶24, 373 Wis. 2d 610, 891 N.W.2d 390.

11

III.  ANALYSIS

¶21  CED and the City disagree on whether the term "special benefits" has the same meaning in both Wis. Stat. ch. 32 and ch. 66.  CED argues that if it has the same meaning, then the City cannot take the position that no special benefits exist in a ch. 32 action but later assert special benefits exist in a ch. 66 action.  We hold the term "special benefits" has the same meaning in both statutes, but that it is used differently in each context.  Accordingly, the City is not barred from imposing a special assessment on CED's property to pay for improvements, provided the City establishes the improvements were local, conferred special benefits on CED's property, and were fair, equitable, and in proportion to the benefits accruing to the property.  These issues involve questions of fact for the trier of fact to resolve.

A.  The Meaning and Application of "Special Benefits"

¶22  We begin with the language of the statutes.  See State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶31, 236 Wis. 2d 211, 612 N.W.2d 659).  Except for technical or specially-defined words or phrases, "[s]tatutory language is given its common, ordinary, and accepted meaning. . . ."  Id.  Additionally, because "[c]ontext is important to meaning. . . . statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-

related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46 (citations omitted). "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id.

¶23 Wisconsin Stat. §§ 32.09 and 66.0703(1)(a) both use the term "special benefits." Wisconsin Stat. § 32.09 governs "all matters involving the determination of just compensation in eminent domain proceedings." Section 32.09(3) provides:

> <u>Special benefits</u> accruing to the property <u>and affecting its market value because of the planned improvement</u> shall be considered and used to offset the value of property taken or damages under [Wis. Stat. § 32.09(6)], but in no event shall such special benefits be allowed in excess of damages described under sub. (6).[10]

(Emphasis added.) Section 66.0703 governs the general rules applicable to special assessments imposed by a city, town or village. Section 66.0703(1)(a) provides:

> Except as provided in s. 66.0721,[11] as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for <u>special benefits conferred upon the property</u> by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments.

---

[10] Wisconsin Stat. § 32.09(6) provides the method to determine the amount a property owner shall be compensated in the case of a partial taking of property.

[11] Wisconsin Stat. § 66.0721, entitled "Special assessments on certain farmland or camps for construction of sewerage or water system," is not relevant to the analysis of this case.

(Emphasis added.)

¶24 Because neither statute defines the non-technical term "special benefits," we give the term its common, ordinary, and accepted meaning. Kalal, 271 Wis. 2d 633, ¶45. The common, ordinary, and accepted meaning of the term "special benefits" itself does not change from one statutory section to another, particularly when the statutory provisions have some relationship as they do here.[12] "Statutes in pari materia are to be interpreted together as though they were one law." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012). In other words, laws addressing the same subject should be interpreted harmoniously, if possible. Id. There is no textual basis for assigning different interpretations of "special benefits" accruing to property in the context of eminent domain versus "special benefits" conferred on property upon which a special assessment is levied. Wisconsin courts have applied the same definition of special benefits in both the eminent domain and special assessment contexts.

¶25 "Special benefits" means "an uncommon advantage." Red Top Farms v. DOT, 177 Wis. 2d 822, 833, 503 N.W.2d 354 (Ct. App. 1993) (eminent domain); Goodger v. City of Delavan, 134

---

[12] "The presumption of consistent usage applies also when different sections of an act or code are at issue" and "the more connection the cited statute has with the statute under consideration, the more plausible the argument becomes." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Text 172-73 (2012).

Wis. 2d 348, 352, 396 N.W.2d 778 (Ct. App. 1986) (special assessment). "Special" is defined as "[s]urpassing what is common or usual." Special, American Heritage Dictionary of the English Language (1992 3d. ed.). "Benefit" is defined as "[s]omething that produces or enhances well being; an advantage." Benefit, American Heritage Dictionary of the English Language (1992 3d ed.). This judicial definition of "special benefits" as "an uncommon advantage" aligns with the text of both statutes.

¶26 In Goodger, the court of appeals addressed whether a special benefit was conferred for purposes of determining the validity of a special assessment. 134 Wis. 2d at 352. It adopted a plain meaning definition of "special benefits" to denote "uncommon advantage" because "[a]bsent . . . a legislative definition, the ordinary and accepted meaning of a word used by the legislature can be established by reference to a recognized dictionary." Id. (citation omitted).

¶27 The legislature uses the term "special benefits" in each statute differently. In Wis. Stat. § 32.09(3), the term begins the subsection and is qualified by the words that follow: "Special benefits accruing to the property and affecting its market value because of the planned improvement . . . ." In Wis. Stat. § 66.0703(1)(a), the term is embedded in the middle of a sentence and is not qualified by an effect on the property's market value: " . . . for special benefits conferred upon the property by any municipal work or improvement. . . ." Although the meaning of the term "special benefits" itself

15

remains the same in both statutes, how it is used and applied in the eminent domain and special assessment contexts is textually different.

¶28 In the eminent domain statute, "special benefits" are restricted to those local improvements that affect the market value of the property[13] for purposes of determining whether to offset compensation to the owner of property taken for a planned public improvement. If the improvement project necessitating the taking does not affect the market value of the property, then the City is not entitled to an offset for any special benefits accruing to the property because of the planned improvement. An assertion of "special benefits" in eminent domain actions acts as an affirmative defense for the condemnor; the governmental body has the burden of showing it is entitled to an offset when property immediately increases or imminently will increase in market value. Hietpas v. State, 24 Wis. 2d 650, 656-57, 130 N.W.2d 248 (1964); see also Molbreak v. Vill. of Shorewood Hills, 66 Wis. 2d 687, 703, 225 N.W.2d 894 (1975) ("special benefits accruing to land not taken in eminent domain . . . may be set off against damages if they enhance the

---

[13] This court expanded the scope of special benefits to include "imminent adaptability of the land to a higher and better use from an economic standpoint because of proximity to the public improvement." Hietpas v. State, 24 Wis. 2d 650, 656, 130 N.W.2d 248 (1964). Concomitantly, this court also extended the meaning of special benefits "to include enhanced value because of more advantageous adaptability for use." Petkus v. State, 24 Wis. 2d 643, 648, 130 N.W.2d 253 (1964).

16

market value _immediately_" (emphasis added) (citing _Hietpas_, 24 Wis. 2d at 656-57)).

¶29 The statutory qualification in Wis. Stat. § 32.09(3) links special benefits to an effect on the market value of the property. When the property's market value remains unaffected by the planned improvement, a particular taking may not require an offset against compensation owed to the property owner. Regardless, the improvement project may nevertheless confer special benefits on the property owner within the meaning of ch. 66.

¶30 Wisconsin Stat. § 66.0703(1)(a) does not condition special assessments on the conferral of special benefits affecting the market value of the property. The work or improvement must only provide an uncommon advantage specific to that property. _See_ _Genrich_, 268 Wis. 2d 233, ¶¶13-14; _Goodger_, 134 Wis. 2d at 352. Under § 66.0703(1)(a), "special benefits" can include an increase in market value following the improvement. _Molbreak_, 66 Wis. 2d at 703. But the text does not require it.

¶31 CED argues that the word "shall" in Wis. Stat. § 32.09(3) is mandatory language requiring the City to consider and use any special benefits to offset compensation to the property owner in an eminent domain action; therefore, CED argues, failing to raise special benefits in an eminent domain action forecloses a municipality from later assessing the property for special benefits purportedly conferred. This argument ignores the narrowing of § 32.09(3)'s mandate to only

17

those special benefits affecting a property's market value. In the absence of an immediate or imminent increase in a property's fair market value triggered by the planned public improvement, the municipality need not consider or use special benefits to offset the value of property taken under § 32.09.[14]

¶32 In the eminent domain proceeding involving CED's property, the City's expert witness testified that he did not believe CED's property received any special benefits from the improvement project:

---

[14] CED asserted at oral argument before this court that the City is judicially estopped from specially assessing CED for "special benefits" because it conceded no special benefits arose in the condemnation action. We disagree. Judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." State v. Petty, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996)(citations omitted). The doctrine is equitable in nature, intended to protect the proceedings against "cold manipulation" rather than "unthinking or confused blunder[s]." Id. (citations omitted). Accordingly, "[t]he doctrine is only applied when the positions taken by a party are truly inconsistent." Id. at 350 n.5.

The City's position in each proceeding is not clearly inconsistent. "Special benefits" in condemnation actions are limited to immediate or imminent increases to a property's fair market value. The City is not specially assessing CED on the basis of an increase in the fair market value of CED's property. If the City successfully establishes the conferral of special benefits on CED's property, based on the asserted "substantial increase[s] in accessibility, which includes safer, lower cost, and shorter travel times for customers, deliveries and employees," then the City may levy and collect a special assessment upon CED's property, provided the other prerequisites——the improvement is local and the special assessment is reasonable——are met.

Q. Okay. In your appraisal here, did you find any special benefits to the subject property?

A. No.

Q. Okay. Are there any special benefits to the property in this case?

A. I don't believe so.

This testimony does not resolve the issue of special benefits in the context of a special assessment because the record is unclear regarding whether the City's expert identified no special benefits that affected the property's market value or if he identified no special benefits whatsoever.

¶33 We conclude that "special benefits" has the same meaning in each statute, but the failure to raise the issue of special benefits in an eminent domain action does not necessarily preclude a municipality from levying and collecting "special benefits" via a subsequent special assessment. Notably, in an eminent domain action, only special benefits accruing to the property that affect its market value because of the planned improvement are required to be considered and used to offset the value of the property taken. Wis. Stat. § 32.09(3). In contrast, special assessments upon property may be levied and collected for special benefits conferred on the property by the improvement, regardless of the impact on the property's market value; Wis. Stat. § 66.0703 is silent on the subject.

¶34 CED decries the inefficiency and burden of forcing property owners to "endure" two proceedings; however, the remedy lies not with the judiciary but with the legislature, which

19

produced the ostensible problem.  Perhaps, as CED contends, the legislature did not intend this result but this court does not divine the legislature's intentions; it interprets what the legislature actually enacted.

B.  Prerequisites to Police Power Special Assessments

¶35 While the City's denial of special benefits in the eminent domain action does not foreclose its assertion of special benefits in a subsequent special assessment, the City must satisfy certain requirements in order for its assessment to be valid.  In order for the City to exercise its police power[15] to levy a special assessment on property to pay for public improvements, three requirements must be met:  (1) the improvement must be local rather than general; (2) the improvement must confer special benefits on the property; and (3) the assessment must be fair and equitable and in proportion to the benefits accruing.  First State Bank, 366 Wis. 2d 219, ¶9 (citations omitted).  These three requirements are interdependent.  If the improvement is deemed general, the inquiry stops and the special assessment is not permissible.  If the improvement is local, the analysis shifts to whether the property received special benefits.  If not, the special assessment is invalid.  If special benefits are found, the review moves to the assessment's reasonableness.  Each requirement is addressed in turn.

---

[15] It is undisputed that the City exercised its police power in imposing the special assessments to fund the improvement project.

20

### 1. Local versus general improvements

¶36 Because special assessments can be levied only for local improvements, the character of the improvement must first be determined before the propriety of the assessment is considered. Genrich, 268 Wis. 2d 233, ¶9. A public improvement is general in character if it "confers a substantially equal benefit and advantage on the property of the whole community or benefits the public at large." Duncan Dev. Corp. v. Crestview Sanitary Dist., 22 Wis. 2d 258, 264, 125 N.W.2d 617 (1964). Typically, general improvements are "financed by general taxes." Id. Because a general improvement benefits the whole community, it may naturally provide a benefit of some degree to the affected property. In contrast, although a local improvement "may incidentally benefit all the property in the municipality and the public at large" it "is made primarily for the accommodation and convenience of inhabitants of a particular area in the community whose property receives a special benefit from the improvement." Id. (emphasis added). "The fact that an improvement confers a general benefit on the community does not mean that certain property cannot benefit specially." Molbreak, 66 Wis. 2d at 699 (first citing Brock v. Lemke, 455 P.2d 1, 3 (1969); then citing 63 C.J.S. Municipal Corps. § 1314) (special assessment); see also Red Top Farms, 177 Wis. 2d at 829 ("special benefit . . . accrues to a property owner in addition to the benefit enjoyed by other property owners in the community").

¶37 Because special assessments can be levied only "for local improvements . . . the circuit court must examine whether the improvement was local, that is, whether the purpose was to accommodate particular property owners and confer a special benefit."  Park Ave. Plaza v. City of Mequon, 2008 WI App 39, ¶20, 308 Wis. 2d 439, 747 N.W.2d 703 (citations omitted).  In order to be considered local rather than general, the special benefit must also have "the effect of furnishing an uncommon advantage to a property differing in kind, rather than in degree, from the benefits enjoyed by the general public."  Id., ¶17 (citations omitted); Genrich, 263 Wis. 2d 233, ¶14; Petkus v. State, 24 Wis. 2d 643, 648, 130 N.W.2d 253 (1964).  This concept dates back to 1851, when this court held that "common advantages to the neighborhood were not chargeable as benefits . . . but only such as were peculiar to [the particular parcel]."  Red Top Farms, 177 Wis. 2d at 826 (citing Milwaukee & Miss. R.R. v. Eble, 3 Pin. 334, 358 (1851)).  The test is whether the property upon which the special assessment is levied "has gained a benefit not shared by any other parcel."  Id. at 832.

### 2.  Special benefits

¶38 If an improvement is local in character, the next consideration is whether the improvement conferred special benefits on the subject property.  Section III.A comprehensively examines the meaning of "special benefits."  Additionally, we note that "a benefit could accrue without any actual use of the improvement."  Molbreak, 66 Wis. 2d at 701.  Commercial property

22

may receive special benefits from improved traffic safety and aesthetic improvements to an adjacent public road. Id. at 699. Finally, "the benefits necessary to sustain a special assessment 'must be substantial, certain, and capable of being realized within a reasonable time.'" Wm. H. Heinemann Creameries, Inc. v. Vill. of Kewaskum, 275 Wis. 636, 641, 82 N.W.2d 902 (1957)(citation omitted).

¶39 We also address CED's argument that this court incorrectly expanded "special benefits" to mean not only an improvement, but also to encompass a "service." Duncan, 22 Wis. 2d at 264 (first citing 14 McQuillin, Municipal Corporations § 38.11 (3d ed.); then citing 48 Am. Jur. 2d Special or Local Assessments § 1 (1964)). The expansion of "special benefits" in Duncan ostensibly to include services was repeated but not applied by the court of appeals in Genrich, 268 Wis. 2d 233, ¶13, and First State Bank, 366 Wis. 2d 219, ¶20 ("[a]n uncommon advantage will either increase services to property or enhance its value"). Notably, Duncan involved an assessment based on enhanced value of the property as a result of the improvement. 22 Wis. 2d at 268.

¶40 Accepting CED's argument could require us to overrule Duncan, a step we need not analyze.[16] While it is questionable whether services constitute "special benefits" for which a

---

[16] Because a roundabout is unquestionably an improvement and not a service, we defer a thorough analysis of Duncan Development Corp. v. Crestview Sanitary District, 22 Wis. 2d 258, 125 N.W.2d 617 (1964).

23

special assessment potentially could be levied,[17] the issue is irrelevant in this case because a roundabout is an improvement, not a service. "Service" as defined in § 66.0627(1)(c) includes:

> snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, recycling, storm water management, including construction of storm water management facilities, tree care, removal and disposition of dead animals under s. 60.23 (20), loan repayment under s. 70.57 (4) (b), soil conservation work under s. 92.115, and snow removal under s. 86.105.

Construction of a roundabout is not mentioned in the statutory definition of services and nothing in the list of services is analogous to a roundabout. While use of the word "includes" indicates that what follows are examples rather than an

---

[17] Under Wis. Stat. § 66.0627(2), a municipality "may impose a special charge against real property for current services rendered . . . ." Section 66.0627(1)(c) defines "service." In contrast, Wis. Stat. § 66.0703 governs the levying and collection of "special assessments" for "special benefits" conferred on property by an improvement. Because special charges are imposed for services, whereas special assessments are levied and collected for improvements, the legislature regards services and improvements as distinct things subjecting property owners to different taxes: charges for services and assessments for improvements.

24

exhaustive list,[18] the associated-words canon instructs that associated words bear on one another's meaning. Brown v. Chi. & N.W. Ry. Co., 102 Wis. 137, 156, 78 N.W. 771 (1899) ("You may know the meaning of a term by its associates,——what precedes and what follows it. When? Not in every case; but when not apparent from the language itself."); Scalia & Garner, supra ¶24, at 195. The statutory examples of "services" have in common the removal or rectification of temporary but recurring occurrences, such as snow, weeds, and dead animals, along with repair of sidewalks, curbs, or gutters——but not the construction of a permanent structure like a roundabout.[19] Contrary to the City's characterization, infrastructure is not a service.

---

[18] "The verb to include introduces examples, not an exhaustive list." Scalia & Garner, supra note 12, at 132; State v. James P., 2005 WI 80, ¶26, 281 Wis. 2d 685, 698, 698 N.W.2d 95, 102 (quoting Wis. Citizens Concerned for Cranes and Doves v. DNR, 2004 WI 40, ¶17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612) ("'Generally, the word "includes" is to be given an expansive meaning, indicating that which follows is but a part of the whole.' While courts may sometimes read the word 'includes' as a term of limitation or enumeration under the doctrine of expressio unius est exclusio alterius, there must be some textual evidence that the legislature intended this doctrine to apply.").

[19] The reconstruction of the intersection included the replacement and repair of sidewalks: According to the report of the Public Works Director and City Manager, "[d]efective sidewalks section include those with open cracks, offset joints or other defects that create a hazard to those using the sidewalk. Removal of the hazards provides a safe corridor for pedestrians to access the site." "[R]epair of sidewalks" is specifically enumerated as a service for which the City may impose a special charge on real property under Wis. Stat. § 66.0627(2).

Improved infrastructure may facilitate the delivery of services to a property but it is not, in and of itself, a service.

### 3.   Reasonableness

¶41 The third prerequisite to the exercise of the police power to levy a special assessment requires a reasonable basis for the assessment.  An assessment made under the police power is not limited to the value of the benefits conferred on the property but must be made on a reasonable basis.  Steinbach v. Green Lake Sanitary Dist., 2006 WI 63, ¶13, 291 Wis. 2d 11, 715 N.W.2d 195.  Reasonableness in this context requires (1) uniformity——the assessment must be fairly and equitably apportioned among all affected properties; and (2) uniqueness—— the assessment on a particular property must be in proportion to the benefits conferred.  Genrich, 268 Wis. 2d 233, ¶¶20-21.

¶42 Multiple methods may be used to achieve uniformity. Id., ¶21.  The City's selected method must be fair and equitable and produce an assessment in proportion to the benefits accruing to the property.  Berkvam v. City of Glendale, 79 Wis. 2d 279, 287, 255 N.W.2d 521 (1977).  In examining uniqueness, the circuit court must consider the degree, effect, and consequences of the special benefits.  Id.  "Whether the facts relating to a special assessment made pursuant to the police power fulfill the 'reasonableness' standard is a question of law . . . ." Steinbach, 291 Wis. 2d 11, ¶11.  A special assessment in substantial excess of special benefits accruing to the property is an unlawful taking without compensation.  Wm. H. Heinemann

Creameries, 275 Wis. at 640-41 (citing Vill. of Norwood v. Baker, 172 U.S. 269, 279 (1898)).

> C.  Genuine Issues of Material Fact Exist Regarding the Validity of the Special Assessment Levied on CED's Property.

¶43 Having set forth the law governing the validity of assessments, we now apply it to the City's assessment of CED's property.  CED argues the court of appeals erred in affirming the circuit court's grant of summary judgment because CED presented sufficient evidence demonstrating disputed issues of material fact.  The City responds that CED failed to overcome the presumption of correctness and therefore summary judgment was proper.  In the case of a special assessment appeal, "where the assessing body did consider what property would be benefited by the improvement and assessed according to the amount of the benefit . . . in the absence of evidence to the contrary there is a conclusive presumption that the assessment was on the basis of benefits actually accrued."  Molbreak, 66 Wis. 2d at 696 (emphasis added) (first citing Hennessy v. Douglas Cty., 99 Wis. 129, 139, 74 N.W. 983 (1898); then citing Friedrich v. Milwaukee, 118 Wis. 254, 256, 95 N.W. 126 (1903)).  To overcome this presumption on appeal to the circuit court,

> the burden is on the objector to show either that: (1) The statutory procedure was not followed, or (2) that the assessment was not based on benefits, or (3) that the assessing authority did not view the premises to make such a determination, or (4) for the objector to produce competent evidence that the assessment is in error.

27

Id. Significantly, the presumption of correctness exists only in the absence of evidence to the contrary. Molbreak, 66 Wis. 2d at 696.

¶44 CED contends the affidavit of its expert witness, James C. Johnson, raises genuine issues of material fact regarding whether the improvement plan was general or local, whether the project conferred special benefits on CED's property, and whether the assessment was reasonable. The City dismisses the Johnson affidavit as insufficient to overcome the presumption of correctness and asserts this matter is controlled by Park Ave. Plaza, 308 Wis. 2d 439, in which the court of appeals upheld a grant of summary judgment in favor of the City because the new road project resulted in increased traffic flow. We hold that CED overcame any presumption of correctness and presented sufficient evidence to raise genuine issues of material fact regarding whether the improvement was general or local and whether the project conferred special benefits on CED's property. Resolution of these issues will determine whether the circuit court reaches the reasonableness of the assessment on remand.

¶45 With respect to the first issue, the City's Initial Resolution Declaring Intent to Reassess CED's property declares "[t]he purpose of the project is to reduce congestion at the intersection, increase traffic safety, renew utilities and enhance aesthetics." Generally, the City identifies the sidewalk replacement and repair, concrete paving, new and re-laid sewer laterals, concrete driveway approaches, and

28

streetscape/landscape improvements as providing local and specific benefits to CED's property. The City also points to the improved traffic flow, a substantial increase in accessibility, and reduced congestion as local and specific benefits.

¶46 In response, CED generally argues the roundabout was constructed not to benefit nearby businesses, but for the primary purpose of benefiting the traveling public. Specifically, CED proffers Johnson's affidavit as evidence contradicting the City's assertion of local benefits. In his affidavit, Johnson denies the purpose of the roundabout was local, points to a decreased value of CED's property as a result of its construction, and opines that the project did not improve the convenience of CED's property or its customers, noting the safety issues created by the reconfiguration of the intersection. CED also points to evidence indicating that increased accessibility was not an effect of the reconstruction project, citing testimony in the affidavit of the City's Assistant Director of Public Works/City Engineer that "[t]he CED property has the exact same access after completion of the project as it did prior to the project. The driveway access is in the same location. The driveway access has the same configuration."

¶47 "[T]he inquiry into the nature of an improvement"——that is, whether a special benefit is local or general——"presents a question of fact." Genrich, 268 Wis. 2d 233, ¶2. "What may be called a local improvement under one set of facts

29

may well constitute a general improvement in the context of different facts." Duncan, 22 Wis. 2d at 265. On remand the finder of fact must determine whether the purpose was to accommodate CED's property in particular, along with the other property owners, with the effect of conferring special benefits on CED's property.

¶48 Whether a special benefit has been conferred is also a question of fact. First State Bank, 366 Wis. 2d 219, ¶20 (citing Park Ave. Plaza, 308 Wis. 2d 439, ¶20). "Summary judgment is improper if specific facts could support a finding by a reasonable jury that a special benefit does not exist." Id. In this case, the testimony of the City's expert witness during the eminent domain proceeding regarding the absence of special benefits, coupled with the comparable testimony of CED's expert witness, who opined that "[t]here is absolutely no benefit to [CED's property] let alone a special benefit" from the improvement, contradict the City's position in the special assessment proceeding. The existence or absence of a special benefit presents a question for the factfinder to decide. Hietpas, 24 Wis. 2d at 656.

¶49 Here, Johnson's affidavit contains evidence contradicting the City's position; he insists the property received no special benefits whatsoever. Johnson's affidavit and appraisal assert that the placement of the roundabout actually impairs rather than benefits CED's property for a variety of reasons, including reduced congestion discouraging impulse stops at fast food restaurants, the removal of

30

landscaping that obscured drive-thru traffic for diners inside, and the lack of direct access to the property for traffic coming from three directions, potentially causing unsafe lane changes to access it. Johnson opines that the roundabout's construction overall reduced the value of CED's property. The City disagrees with Johnson's assessment and points out that the roundabout improved traffic flow through the area, improved existing sidewalks and landscaping, and made the area safer. In his affidavit, Johnson refutes the notion that the landscaping on the central island of the roundabout increases the value of CED's property, noting that CED possesses no property rights in landscaping, which could be changed at any time.

¶50 Johnson's affidavit "cuts to the heart of the matter and creates a genuine issue of material fact" rendering summary judgment inappropriate. Genrich, 268 Wis. 2d 233, ¶17. A reasonable jury could find that CED's property received no benefits at all from the reconfigured intersection or it could find that CED received the exact same benefits as the public at large. Park Ave. Plaza is distinguishable because the property owner presented "nothing to rebut the City's conclusion that commercial properties received special benefits." Id., ¶26. Here, CED presented Johnson's evidentiary affidavit. Because disputed issues of material fact must be resolved by the factfinder, summary judgment was improper.

¶51 Additionally, CED contends that the assessment imposed upon it was unreasonable because it was unfairly and inequitably apportioned among similarly situated property owners. CED's

31

$40,103.03 assessment was twice as much as any other assessment. The City responds that it performed a "per lineal foot" assessment and justifies the higher assessment on CED's property because it sits on the corner. Accordingly, it has footage on both Murdock and Jackson Streets. While the reasonableness of the assessment presents a question of law, the analysis depends upon resolution of the first two issues. Because "'[r]easonableness' turns on the totality of the facts and circumstances" this issue "is not easily disposed of on summary judgment." Preloznik v. City of Madison, 113 Wis. 2d 112, 122 n.3, 334 N.W.2d 580 (1983) (citation omitted). In this case, the issue of reasonableness cannot be disposed of on summary judgment because issues of fact related to the character of the improvement and whether it conferred any special benefits on CED's property must first be resolved. Specifically, the trier of fact must determine what, if any, benefits CED's property received in order to determine if the assessment is proportionate to those benefits compared with the benefits accruing to all benefited properties. Steinbach, 291 Wis. 2d 11, ¶20.

## IV. CONCLUSION

¶52 The term "special benefits" means the same in both the eminent domain statute, Wis. Stat. § 32.09(3), and the special assessments statute, Wis. Stat. § 66.0703(1)(a): "uncommon advantage." Under § 32.09(3), only those special benefits that affect the market value of a property because of a planned improvement must be considered and used to offset the

32

compensation owed to the owner of property taken for the improvement. Section 66.0703(1) permits a municipality to levy and collect a special assessment upon property for special benefits conferred upon the property by an improvement, regardless of the improvement's effect on the property's market value. Because of this distinction, a governmental body's failure to raise special benefits in the eminent domain action does not foreclose its ability to levy and collect a special assessment upon a property for special benefits conferred.

¶53 The circuit court improperly entered summary judgment in the City's favor in light of CED's submission of evidence challenging the validity of the special assessment, which showed a genuine dispute regarding whether the improvement plan was general or local and whether the project conferred special benefits on CED. Each of these issues must be decided by the trier of fact. If the factfinder on remand finds the improvement was local and conferred a special benefit on CED's property, the circuit court will then determine whether the assessment was reasonable as a matter of law.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶54 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The court of appeals got it right. The majority errs.

¶55 I write separately to make two points.

¶56 First, the court of appeals (correctly) made clear that although "'[s]pecial benefits' in the eminent domain context and the special assessment context [are] similar in definition, they are distinct and different considerations under distinct and different governmental actions."[1] The majority recognizes that unlike in condemnation proceedings, "special benefits" in eminent domain proceedings must affect the market value of the property. Majority op., ¶33.

¶57 Second, the majority stumbles by failing to acknowledge that CED has not overcome the presumption of correctness of the City's actions and has not established a genuine issue of material fact to overcome summary judgment.

¶58 I agree with Chief Judge Lisa Neubauer, who emphasized these points in her concurrence in the court of appeals: "[CED] has failed to show by 'strong . . . clear and positive proof' that the $20,000 special assessments are not reasonable——given that it is undisputed that improvements to the sidewalks, curb and gutters, etc. have been made——and the reasonableness analysis requires only that CED's property be 'benefited to some extent' and that the amount of the assessment can exceed the value of the special benefits."[2]

---

[1] CED Props., LLC v. City of Oshkosh, No. 2016AP474, unpublished slip op., ¶24 (Wis. Ct. App. Jan. 18, 2017).

[2] CED Props., unpublished slip op., ¶29.

1

¶59  The City is entitled to summary judgment.

¶60  For these reasons, I dissent.

¶61  I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.