COURT OF APPEALS
DECISION
DATED AND FILED

August 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2119**

Cir. Ct. No. 2020CV198

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MICHAEL HEGNA,

PLAINTIFF-APPELLANT,

V.

MEYER SALES COMPANY INC., D/B/A MEYER INTERNATIONAL TRUCKS, D/B/A WILD RIVER SPORT & MARINE, AND EMPLOYERS MUTUAL CASUALTY COMPANY,

DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Barron County: MAUREEN D. BOYLE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Hegna appeals a summary judgment dismissing his negligence claim against Meyer Sales Company, Inc., (hereinafter, "Meyer Sales") and its insurer, Employers Mutual Casualty Company.[1] On appeal, Hegna argues that the circuit court erred because genuine issues of material fact preclude summary judgment. We reject Hegna's arguments and affirm.

## BACKGROUND

¶2 Except where otherwise noted, the following facts are undisputed for purposes of this appeal. Hegna was injured on September 15, 2017. At that time, Hegna was employed as a frac sand hauler for M&M Hauling, LLC (hereinafter, "M&M"). M&M was owned by Tim Meyer and Jeff Meyer, who also own Meyer Sales. As of September 2017, Hegna had been employed by M&M for approximately two and one-half years.

¶3 During the course of his employment, Hegna primarily drove an International Eagle dump truck (hereinafter, "the truck") owned by M&M. Hegna took and stored the truck at his home every night after work, except on occasions when he took the truck in for service.

¶4 On September 15, 2017, Hegna finished delivering a load of sand to a processing plant using the truck, and he then drove the empty truck back to his home. When he arrived at home, Hegna remained in the truck to complete his paperwork for the day. After completing his paperwork, Hegna attempted to get

---

[1] When referring to arguments made and actions taken in this litigation by both Meyer Sales and Employers Mutual Casualty Company, we refer to those parties collectively as "Meyer Sales."

out of the truck by grabbing hold of its driver's side door, pulling himself up, and standing on an exterior driver's side step (hereinafter, "the step"). While Hegna was standing on the step, it detached from the truck, causing Hegna to fall to the ground. During the fall, Hegna hit his back on the truck and dislocated his shoulder.

¶5     The truck's step had two U-shaped channels that sat on small pegs that stuck out on each side of a battery box located beneath the step. The channels and pegs allowed the step to be removed for access to the truck's batteries. To hold the step in place while driving, there were spring-loaded "hold-down[s]" or "tie-down[s]" on each side of the step, which the parties call "T-handles." The parties agree that these T-handles "[went] onto little knobs on the battery box and [held] the top step tight."

¶6     Hegna asserts that a few days after the accident, he and his son observed that the T-handles on the truck's step were "rusted out" and "weren't even doing anything." Stated differently, they observed that the T-handles were "frozen," meaning that "[t]hey look[ed] like they [were] holding something down but they actually weren't." Based on these observations, Hegna claims that the accident in this case occurred because the step was not secured by either of the T-handles, which caused the step to come off of its perch on the truck when he stepped on it.

¶7     It is undisputed that during the two and one-half years that Hegna worked for M&M prior to his accident, he never noticed any problems with the step, and he never personally opened the step. During his employment with M&M, Hegna would go in and out of the truck eight to ten times a day, and he testified that he believed he would have noticed if there had been a problem with

3

the step. When delivering his last load of sand on the day of the accident, Hegna used the step to get in and out of the truck and did not notice any problems with it.

¶8      As part of his employment with M&M, Hegna was required to perform general inspections of the truck, which included looking for leaks and checking the truck's lights, springs, and brakes. Every day after work, Hegna would perform a walk-around inspection of the truck and fill out paperwork documenting any problems that he observed. Hegna looked at the T-handles during his daily inspections, but he never physically took them off or noticed them being "frozen." Hegna's inspection reports for the two months preceding his September 2017 accident did not note any problems with the truck's step, the T-handles, or the truck's batteries.

¶9      During Hegna's employment with M&M, Meyer Sales performed all maintenance and repair work on the truck. Hegna testified that he would drop the truck off at Meyer Sales once a week for a "grease job" and every three weeks or 10,000 miles for "major" maintenance. James Ormson, the service manager for Meyer Sales, testified that during major maintenance, Meyer Sales would change the truck's oil, change its oil and fuel filters, grease the truck, and briefly inspect the truck for fluid leaks and for braking, steering, and tire issues.

¶10     Hegna does not know when Meyer Sales last performed maintenance on the truck before his accident. Hegna believes that when Meyer Sales performed major maintenance on the truck, it was supposed to open the step and check the truck's batteries. Hegna also believes that Meyer Sales should have been checking the T-handles when it performed major maintenance on the truck. Hegna did not receive any documentation from Meyer Sales, however, indicating the items that it checked when it performed major maintenance on the truck.

Instead, Hegna claims Tim Meyer told him that Meyer Sales checked the truck's battery box during major maintenance. Tim Meyer testified, however, that he has no involvement with the maintenance work performed by Meyer Sales and has no personal knowledge regarding the services performed during major maintenance on a truck.

¶11    Ormson testified that the major maintenance performed on the truck every 10,000 miles did not involve checking the truck's batteries or battery box, unless there had been a reported problem with the engine starting or with the charging system. Ormson testified that unless a problem was brought to Meyer Sales' attention, it would check the truck's batteries only once a year, typically in October or November. Hegna concedes that he never had any trouble with the truck's batteries.

¶12    Ormson further testified that the T-handles would not be checked during major maintenance, aside from a "glance" to make sure they were hooked up. If Meyer Sales noticed any problems with the T-handles during its annual check of the truck's batteries, it would replace them. The truck's service records for the year preceding the September 2017 accident show that Meyer Sales did not document any concerns regarding the T-handles during that time. In particular, the service records show that, prior to the accident, the truck's batteries were last checked in November 2016, and that Meyer Sales last performed service on the step in February 2017. Meyer Sales did not note any problems with the T-handles on either of those occasions.

¶13    Hegna filed the instant lawsuit against Meyer Sales in July 2020 and filed an amended complaint in September 2020. Both the complaint and the

amended complaint asserted a single claim—namely, that Meyer Sales was negligent in its performance of maintenance services on the truck.

¶14 Following discovery, Meyer Sales moved for summary judgment, arguing Hegna could not prove that Meyer Sales had a duty of care to discover and repair the allegedly defective T-handles or to warn Hegna about their defective condition. The circuit court agreed, concluding there was no "genuine issue of material fact from which a reasonable jury could find in favor of [Hegna]." The court therefore granted Meyer Sales' summary judgment motion and entered a judgment dismissing Hegna's amended complaint with prejudice. Hegna now appeals.

## DISCUSSION

¶15 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2019-20).[2]

¶16 "In order to survive summary judgment, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material 'set[ting] forth specific

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

facts' pertinent to that element." ***Dahm v. City of Milwaukee***, 2005 WI App 258, ¶4, 288 Wis. 2d 637, 707 N.W.2d 922 (citations omitted). A factual issue is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. ***Strasser v. Transtech Mobile Fleet Serv., Inc.***, 2000 WI 87, ¶32, 236 Wis. 2d 435, 613 N.W.2d 142.

¶17 When reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party. ***CED Properties, LLC v. City of Oshkosh***, 2018 WI 24, ¶19, 380 Wis. 2d 399, 909 N.W.2d 136. Any doubts as to whether a genuine issue of material fact exists must be resolved against the moving party. ***Id.*** Nonetheless, "[a] party opposing a summary judgment motion must set forth 'specific facts' evidentiary in nature and admissible in form, showing that a genuine issue exists for trial. It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based upon personal knowledge." ***Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.***, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999).

¶18 In this case, Hegna has asserted a common-law negligence claim against Meyer Sales. A negligence claim requires proof of four elements: "(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." ***Morden v. Continental AG***, 2000 WI 51, ¶45, 235 Wis. 2d 325, 611 N.W.2d 659 (citation omitted). The circuit court concluded that Meyer Sales was entitled to summary judgment on Hegna's negligence claim because the undisputed facts established, as a matter of law, that Meyer Sales had no duty to discover and repair the allegedly defective T-handles or to warn Hegna about their defective condition. For the reasons that follow, we agree with the court's conclusion in that regard.

7

¶19     The parties agree that the applicable duty of care is set forth in WIS JI—CIVIL 3250 (1994), which provides:

> It is the duty of a person, who, while [servicing] a machine … , has observed defects in the same, to exercise ordinary care to repair such defects so as to render such machine … safe for its intended use, or give the buyer or user thereof notice of the danger involved in the use thereof.

Hegna asserts that in this case, there is a genuine dispute of material fact as to whether Meyer Sales knew, or should have known, about the truck's "frozen" T-handles. Pursuant to WIS JI—CIVIL 3250, Hegna contends that if Meyer Sales knew, or should have known, about the defective and dangerous condition of the T-handles, then Meyer Sales had a duty to repair the T-handles or, at a minimum, to warn Hegna about the danger they posed.

¶20     There are multiple problems with Hegna's argument. First, the duty of care described in WIS JI—CIVIL 3250 applies only when a person servicing a machine "has observed defects in the same"—in other words, when the person has *actual knowledge* of such defects. Here, there is no evidence that Meyer Sales had actual knowledge of any problem with the truck's T-handles. In particular, the truck's service records show that Meyer Sales did not note any problems with the T-handles when it last checked the truck's batteries in November 2016 or when it last performed service on the step in February 2017. The only reasonable inference from these facts is that Meyer Sales was not aware of any problem with the T-handles prior to Hegna's accident. Absent evidence that Meyer Sales had actual knowledge of a problem with the T-handles, Meyer Sales had no duty to repair the T-handles or to warn Hegna about any danger they posed.

¶21 Hegna asserts that regardless of Meyer Sales' actual knowledge, Meyer Sales *should have known* about the dangerous condition of the T-handles, and it therefore had a duty to repair them or to warn Hegna about them. Hegna cites no legal authority, however, supporting the proposition that Meyer Sales had a duty to discover the defective the T-handles or had a duty, absent actual knowledge of a defect, to repair the T-handles or to warn Hegna about their defective condition. As noted above, the duty discussed in WIS JI—CIVIL 3250 is limited to situations in which a person servicing a machine "has observed defects in the same."

¶22 Furthermore, as Meyer Sales observes, Wisconsin courts have been unwilling to impose liability on service and repair entities that are hired to perform one task and are then blamed for failing to perform another. For instance, in ***Rolph v. EBI Cos.***, 159 Wis. 2d 518, 524, 532-37, 464 N.W.2d 667 (1991), our supreme court concluded that a company hired to recondition a machine had no duty of care to bring that machine into compliance with applicable safety standards when the company did not hold itself out as performing that service and was not asked to do so by the machine's owner. Hegna does not address ***Rolph*** in his reply brief or otherwise respond to Meyer Sales' argument that it had no duty of care absent actual knowledge of the T-handles' allegedly defective condition. Accordingly, we deem Hegna to have conceded that actual knowledge was required. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶23 As in the circuit court, Hegna asserts that two pieces of evidence create a genuine issue of material fact as to whether Meyer Sales knew about the defective T-handles prior to his accident. First, Hegna cites a photograph of the

truck's batteries, which he claims was taken "within just a few minutes" of his injury. Hegna asserts that this photograph shows "fresh grease" on the batteries. Second, Hegna cites Ormson's deposition testimony that it was "possible" someone from Meyer Sales could have applied the grease shown in the photograph during the "weeks or couple of months" before Hegna's accident. Taken together, Hegna asserts that this evidence creates a "reasonable inference that the grease [shown in the photograph] had been recently applied," which would have permitted the jury to reasonably infer that Meyer Sales had opened the truck's battery box "recently" before his accident. If Meyer Sales had recently opened the battery box, Hegna contends Meyer Sales would have necessarily discovered the defective T-handles, and it therefore "would have … been incumbent upon Meyer [Sales] to replace [them]."

¶24　The photograph that Hegna relies upon would not permit a jury to draw a reasonable inference that there was fresh grease on the truck's batteries on the date of Hegna's accident. Hegna asserts that the grease must have been new because

> [g]iven the fact that … Hegna's dump truck drives through sand pits and frac sand terminals at the rate of 10,000 miles per month[,] the amount of sand and dust that would accumulate on sticky fresh grease would entirely coat the sticky grease and it would certainly obscure the application of fresh grease in short order.

Hegna therefore contends "the reasonable inference is that if this grease was last applied in October or November of 2016, nearly a year before … Hegna's September [15, 2017] injury, there would be no visible trace of the grease. It would be entirely covered over with frac sand dust."

10

¶25  The record does not contain any admissible evidence that would permit a jury to draw this inference.  *See* WIS. STAT. § 802.08(3) (stating that affidavits submitted in opposition to summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence").  Hegna has merely presented his attorney's own argument about what he believes the photograph in question shows.  Arguments of counsel, however, are not evidence.  *See* WIS JI—CIVIL 110 (2011).  Hegna has not submitted any expert witness's opinion regarding whether the photograph shows fresh grease on the truck's batteries or grease that was applied in November 2016, when Meyer Sales last documented servicing the batteries.  Without such expert testimony, a layperson would have no basis to determine whether the grease depicted in the photograph had been recently applied.  On this record, a jury could not infer that the photograph shows fresh grease without resorting to speculation.  As noted above, a plaintiff cannot rely on mere speculation to defeat a properly supported summary judgment motion.  *See Helland*, 229 Wis. 2d at 756; *see also State ex rel. N.A.C. v. W.T.D.*, 144 Wis. 2d 621, 636, 424 N.W.2d 707 (1988) (explaining that a reasonable inference "cannot be based on speculation or conjecture").

¶26  Hegna's reliance on Ormson's deposition testimony is similarly unavailing.  Ormson's testimony was equivocal, at best.  He merely conceded that it was "possible" someone from Meyer Sales could have applied the grease shown in the photograph "in the weeks or couple of months" before Hegna's accident.  It is well established, however, that a plaintiff in a negligence suit cannot rely upon mere possibilities to sustain his or her burden of proof.  *See, e.g., Schiefelbein v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 221 Wis. 35, 41, 265 N.W. 386 (1936); *Samulski v. Menasha Paper Co.*, 147 Wis. 285, 292, 133 N.W. 142

(1911); *see also* **McCarty v. Menards**, 327 F.R.D. 177, 187 (N.D. Ill. 2018) ("The law does not recognize mere possibilities as a basis for liability. … Thus, neither speculation nor metaphysical possibilities or conjecture are enough to defeat a properly supported factual argument, either on summary judgment, at trial, or otherwise." (citations omitted)).

¶27 When considered in its entirety, Ormson's testimony does not permit a reasonable inference that, prior to Hegna's accident, Meyer Sales had recently applied grease to the truck's batteries. As discussed above, Ormson testified that the major maintenance performed on the truck every 10,000 miles did not involve checking the truck's batteries or battery box unless a problem regarding the engine or charging system had been reported. Ormson further testified that unless a problem regarding the batteries was brought to Meyer Sales' attention, Meyer Sales would check the batteries only once a year, typically in October or November.

¶28 Hegna conceded during his deposition that he never had any trouble with the truck's batteries during the entire time he drove the truck. In addition, the truck's service records show that, prior to the accident, Meyer Sales last checked the truck's batteries in November 2016. Against this backdrop, Ormson's equivocal testimony that it was "possible" someone from Meyer Sales could have applied grease to the truck's batteries "in the weeks or couple of months" before the accident did not create a genuine issue of material fact sufficient to defeat Meyer Sales' properly supported summary judgment motion.

¶29 Finally, even assuming a jury could reasonably infer—based on the photograph and Ormson's testimony—that Meyer Sales had "recently" opened the battery box prior to Hegna's accident, we nevertheless conclude that the circuit

court properly granted Meyer Sales summary judgment. Hegna's argument in opposition to summary judgment is premised on the assumption that if Meyer Sales had recently opened the battery box prior to his accident, it would have necessarily discovered the defective T-handles, thus triggering a duty to repair them under WIS JI—CIVIL 3250. This assumption is flawed, however, because Hegna has set forth no facts or evidence showing at what point the T-handles may have become defective. In other words, there is no evidence from which a fact finder could reasonably determine when the T-handles went from being rusted, but operational, to being "frozen" and inoperable. Nor could a fact finder reasonably determine, without resorting to speculation, whether the T-handles became inoperable before or after the grease shown in the photograph was applied to the truck's batteries.

¶30 On this record, the circuit court correctly determined that there was no "genuine issue of material fact from which a reasonable jury could find in favor of [Hegna]." We therefore affirm the court's grant of summary judgment in favor of Meyer Sales.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

13